Just et ux., Appellants, *v.* Sons
of Italy Hall.

Argued November 17, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Joseph D. Talarico*, with him *Anthony V. DeCello*, and *DeCello, Bua & Manifesto*, for appellants.

*William R. Balph, Jr.*, with him *Elmer D. O'Neill*, and *Chambers, O'Neill, Nicolls, Balph & Paul*, for appellee.

OPINION BY JACOBS, J., April 22, 1976:

This is an appeal from the order of the court below granting defendant-appellee's motion for summary judgment on the ground that the plaintiff-appellant, Judy Just, was contributorily negligent as a matter of law. Mindful that a "... court 'can declare as a matter of law that a certain state of facts amounts to contributory negligence on the part of a plaintiff only in cases so clear that there is no room for fair and sensible men to differ on their conclusions from the available data.' Cooper v. Heintz Manufacturing Co., 385 Pa. 295, 306; Coulton v. Eyre & Co., 330 Pa. 335, 390." *Denver v. Sharpless*, 191 Pa. Superior Ct. 554, 558-59, 159 A.2d 7, 10 (1960), we affirm. The pertinent facts follow a review of the controlling legal principles relating to the disposition of a motion for summary judgment.

In *Toth v. Philadelphia*, 213 Pa. Superior Ct. 282, 285, 247 A.2d 629, 631 (1968), this Court stated: "It is well established that we can sustain a summary judgment only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Pa.R.C.P. 1035(b); Michigan Bank v. Steensen, 211 Pa. Superior Ct. 405, 236 A.2d 565 (1967). The record must be examined in the light most favorable to the nonmoving party. Schacter v. Albert, 212 Pa. Superior Ct. 58, 239 A.2d 841 (1968). The court must accept as true all well-pleaded facts in the plaintiff's pleadings, giving the plaintiff the benefit of all reasonable inferences to be drawn therefrom. Id. Finally, a summary judgment should be granted only when the case is clear and free from doubt. Mallesky v. Stevens, 427 Pa. 352, 235 A.2d 154 (1967)." Instantly, only the

plaintiffs' complaint, the depositions of the plaintiffs, the defendant's motion for summary judgment and the plaintiffs' answer to the motion for summary judgment are of record; the plaintiffs did not oppose the motion for summary judgment with affidavits, additional depositions, or interrogatories of their own which might show a genuine issue of fact. In *Pape v. Smith*, 227 Pa. Superior Ct. 80, 323 A.2d 856 (1974), a trespass action where the plaintiff did not oppose the defendant's motion for summary judgment with affidavits, depositions, or interrogatories of his own, we stated: "Failing this, unless such issue is present within the defendant's supporting affidavit and depositions, plaintiff is precluded from relying on any allegations in his complaint in an effort to propound the existence of a genuine issue of fact. Pa.R.C.P. 1035(d); Phaff v. Gerner, 451 Pa. 146 (1973)." *Id.* at 84-85, 323 A.2d at 858.[1]

Applying the foregoing principles to the instant case the court below correctly required that "the instant summary judgment be wholly supported by the facts appearing in the deposition of the wife-plaintiff and that we ignore the facts alleged in opposition thereto that are set forth only in the plaintiffs' brief."

---

1. Pa.R.C.P. 1035(d) provides: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. *When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.*" (Note omitted) (Emphasis added).

Instantly, there are no allegations in the plaintiffs' complaint which factually deny the wife-plaintiff's admissions in her deposition.

The facts as developed by the depositions taken of the plaintiffs are as follows: On April 3, 1971, the plaintiffs, residents of Pittsburgh, Pennsylvania, were guests at a wedding reception held at the defendant's hall in Ellwood City which is about fifty miles from Pittsburgh. The wife-plaintiff had not been in the hall before and was unfamiliar with the surroundings. About one hour after their arrival the wife-plaintiff needed to use the restroom facilities. Seeing no signs on the premises indicating the location of the ladies' restroom, the wife-plaintiff asked her niece, a resident of Ellwood City, where the ladies' restroom was located. The niece pointed to a doorway on the other side of the hall from where the plaintiffs were seated and said "through that doorway and to the right." Printed Record at 27a. (the wife-plaintiff testified as to the niece's directions; the niece was deceased at the time of the deposition.)

The following testimony, found in the deposition given by the wife-plaintiff, establishes all the pertinent facts relating to the wife-plaintiff's attempt to find the ladies' restroom. "Q. I wonder then if you would please describe in your own words this trip to the ladies' room? A. Yes. That unfortunate trip. I do not like to think of. O.K. I got up from the table, I walked across the hall. I went into an entrance way. It was *quite black,*[2] there wasn't any lights at all. *It was very dark.* I bore to my right and went to go into the restroom and I kept on going that is the last thing I remember. It just happened very quickly.... Q. You mentioned that you went through an entrance way? A. Yes. Q. Were there doors in the entrance way? A. To open any doors, no, nothing. Q. Do you recall, you do not recall seeing any doors at all? A.

---

2. The deposition of the husband-plaintiff contains the following: "Q. Is it fair to call it, the area outside the ladies' room, pitch black? A. Well, to be very truthful, I could not answer that question, but, they said they had to light newspapers to go down after my wife. It would have to have been quite black."

No. I just recall a *black hallway* that I went into and I have been told that is where the restroom was and as I turned right there is where I went down.... Q. You proceeded through this entrance way? A. Yes. Q. And took a right? A. Took a right. Q. And then fell? A. Yes. I went to push, hoping this was a door, then, I pushed because they said to the right and the next thing I knew I was going head first and it was pitch black down there. I could not see at all.... Q. You mentioned you went through an entry way and it was *pitch black?* A. Yes. It was *black.* Q. And this was your first trip to the ladies' room? A. Yes, sir. Q. Were there any lights at all in this area? A. No, sir. Not at all. Q. Is it fair to call it *pitch black?* A. Yes, sir.... Q. When you started towards the ladies' room, did you see a sign above the entry way indicating ladies' room or ladies? A. No. Q. And you do not recall, as I understand it, the existence of swinging doors at all open or closed? A. No. There was not any open. There was not any swinging doors at all that I saw. *It was too black.* I could not see if there was. Q. *It was pitch black?* A. Yes. Q. And you have already indicated you are totally unfamiliar with the place? A. I have never been there before and I wish I'd never gone." (Emphasis added).

As the court below concluded, "[r]eading the entire deposition in the light most favorable to the plaintiffs' side of the case, as we are required to do in a summary judgment proceedings [sic], it is apparent that there is no dispute concerning the following: that there were no doors on the entrance way and that wife-plaintiff encountered no doors prior to falling down the stairs; that she found herself in a hallway in total darkness upon proceeding through the entrance way; that she nevertheless proceeded in confidence relying solely upon the instructions of her niece, and bore to the right; that she fell down the stairs when she: 'went to push, hoping this was a door;' and that she pushed because her niece said through the entrance way and to the right."

The plaintiffs-appellants in their argument generally and in their citation to decisional law have stressed the negligence of defendant. However, the negligence of the defendant is not in issue. The plaintiffs' characterization of the wife-plaintiff as a "business invitee" and their argument relating to the standard of care owed by the defendant to the wife-plaintiff as a consequence of the wife-plaintiff's status as a "business invitee" is of no moment. The focus in this case is solely on the contributory negligence of the wife-plaintiff. The "... plaintiff cannot recover if [her] own negligence, however slight, contributes to the happening of the accident in a proximate way." *McCay v. Phila. Elec. Co.*, 447 Pa. 490, 495, 291 A.2d 759, 762 (1972).

While all of these "darkness" cases "... necessarily depend largely upon their individual facts," *Dively v. Penn-Pittsburgh Corp.*, 332 Pa. 65, 69, 2 A.2d 831, 833 (1938), the law in this area is well defined. In *Barth v. Klinck*, 360 Pa. 616, 62 A.2d 841 (1949) our Supreme Court stated: "As a rule, darkness is, in itself, a warning to proceed either with extreme caution or not at all: Mogren v. Gadonas, 358 Pa. 507, 511, 58 A.2d 150. Accordingly, it is generally held, in the absence of evidence of a compelling necessity, that one who follows an unfamiliar course in the dark or steps into *darkened and unfamiliar space*, relying upon his sense of touch instead of obtaining and using adequate lighting facilities, and sustains personal injuries, is guilty of contributory negligence as a matter of law." *Id.* at 618, 62 A.2d at 842 (emphasis added).[3]

We find the analysis of Justice ROBERTS in *Felix v.*

---

3. We agree with the appellants' distinction between *Barth v. Klinck*, 360 Pa. 616, 62 A.2d 841 (1949), and the instant case. In *Barth v. Klinck*, supra, the dangerous area was "enclosed by a barricade, three feet in height, and a red light was placed at each end of the barricade" as a warning. Nonetheless, the Court's articulation of the law in this area is clearly applicable to this case.

*O'Brien*, 413 Pa. 613, 199 A.2d 128 (1964) particularly instructive when applying the law as articulated in *Barth v. Klinck*, supra to the instant facts. In *Felix v. O'Brien*, supra, the plaintiff was a social guest in the home of the defendant. It was the first time the plaintiff had ever been there. The pertinent facts are summarized as follows:

"On May 29, 1961, plaintiff dined with her family at a local country club. After dinner, they visited the defendant who had previously invited them to her home. They arrived at the O'Brien home at approximately 8:00 p.m. It was the first time plaintiff had ever been there. While the group was in the kitchen, Mrs. Felix asked for the location of the powder room. Mrs. O'Brien replied, 'Right around the corner.' Mrs. Felix then proceeded through a door into a hall and opened an unmarked door to the immediate right of the kitchen door. This door in fact led to a cellar stairway, but Mrs. Felix had no knowledge of this.

"When Mrs. Felix opened the door, she proceeded as though she were walking into a room. The area beyond the door was dark, but she did not reach for the light switch. Immediately inside the doorway was a step down to a landing approximately two feet by three feet and a flight of stairs down from the landing. Plaintiff fell down the steps and was injured." *Id.* at 615, 199 A.2d at 129.

Initially, the Court considered the issue of the defendant's negligence, and concluded that the defendant was not negligent since there was no defect in the premises. *Id.* at 615-17, 199 A.2d at 129-30. Then the Court considered the contributory negligence of the plaintiff and concluded that "[i]n total disregard for her own safety, she moved ahead before attempting to turn on the lights." *Id.* at 617-18, 199 A.2d at 130.[4]

---

4. The plaintiffs-appellants urge: "The case of Felix v. O'Brien,

Similarly, in the present case, we are faced with the unfortunate but uncontroverted fact that the wife-plaintiff entered a "pitch black"[5] hallway in the defendant's hall in a manner that evidences her "total disregard for her own safety." The wife-plaintiff made an "... improvident and unthinking advance into the unknown...." *Hosak v. V.F.W. Club No. 2145, Inc.*, 415 Pa. 548, 549, 204 A.2d 462, 463 (1964) (plaintiff not held contributorily negligent as a matter of law; there was evidence that there were lights in the area which shed partial illumination over the course of travel), and we are of the opinion that the case is "so clear that there is no room for fair and sensible men to differ on their conclusions from the available data." *Denver v. Sharpless*, supra.

---

413 Pa. 613, 199 A.2d 128, also relied on by the defendant is distinguishable. In Felix, *plaintiff* was a licensee, who opened the wrong door." Brief for Appellant at 8. (Emphasis original). The fact that the plaintiff in *Felix v. O'Brien*, supra, was a licensee (social guest), and the wife-plaintiff in this case was a "business invitee" is of no legal consequence. The status of the plaintiff establishes the standard of care owed by the defendant. The defendant's negligence is not in issue. The plaintiff may not venture into an unfamiliar area that is "pitch black" regardless of her status vis a vis the owner of the premises.

5. We are mindful of *Polm v. Hession*, 363 Pa. 494, 70 A.2d 311 (1950) wherein it is stated: "[W]hile [plaintiff] described the vestibule as 'pitch dark' and 'quite dark' it would seem *from other testimony* that this was somewhat of an exaggeration, especially as a photograph of the vestibule shows that the upper half of the door which led from the tavern and the upper half of the storm door which opened into the street were both constructed of glass, so that some measure of light must inevitably have filtered in from both directions." *Id.* at 497, 70 A.2d at 312 (emphasis added).

Instantly, the plaintiffs have not opposed the defendant's motion for summary judgment with affidavits, additional depositions, or interrogatories of their own. In fact, there is testimony that *supports* the wife-plaintiff's statement that the hallway was "pitch black." *See* note 2 supra. Further, there is no evidence of the physical nature of the hallway such that *Polm v. Hession*, supra, is analogous.

In *Bailey v. Alexander Realty Co.*, 342 Pa. 362, 20 A.2d 754 (1941) our Supreme Court observed that "[i]f in *semi-darkness* [a plaintiff] uses his sense of sight as carefully as he can and reasonably believes he can 'see his way' and if his sense of sight deceives him, he may or may not be guilty of negligence and the question will be for the jury." *Id.* at 368, 20 A.2d at 757 (emphasis added). Instantly, the plaintiffs have not opposed the defendant's motion for summary judgment with affidavits, additional depositions, or interrogatories of their own; the wife-plaintiff proceeded in total darkness and no claim has been made that "... [her] senses were deceived by shadows or by anything else." *Bartek v. Grossman*, 356 Pa. 522, 527, 52 A.2d 209, 212 (1947).

Further, it is of no consequence for the wife-plaintiff to emphasize the reliance on her niece's instructions. In *Felix v. O'Brien*, supra, where the defendant was the *owner* of the premises and the one who gave the directions to the plaintiff the Court stated: "[The plaintiff] should not have disregarded what her own senses must have revealed to her — that there was nothing but darkness beyond the door in a home she had never visited before." *Felix v. O'Brien*, supra at 617, 199 A.2d at 130.

The plaintiffs-appellants make two arguments which attempt to establish "genuine issues of fact." First, they rely upon *Haugh v. Harris Bros. Am. Co.*, 315 Pa. 90, 172 A. 145 (1934) for the proposition that "the absence of lighting in the area of the restroom created an assurance that no open stairwell or other unguarded and un-protected dangerous condition existed." Brief for Appellant at 10. A close reading of *Haugh v. Harris Bros. Am. Co.*, supra, immediately establishes the inappropriateness of any reliance thereon. In *Haugh v. Harris Bros. Am. Co.*, supra, two distinguishing factors are evident: (1) the implied assurance of safety arose from the *physical condition* of the premises encountered by the plaintiffs; and (2) a condition of semi-darkness

existed in the theatre at the time of the wife-plaintiff's fall. Moreover, there is no implied assurance of safety when the premises are dark. "[D]arkness is, in itself, a warning to proceed either with extreme caution, or not at all." *Barth v. Klinck*, supra.

The second point urged by the plaintiffs-appellants is that "the question of the *necessity* of the Appellant being in the area of the restroom is one which a jury must decide upon presentation of all evidence." Although plaintiffs-appellants have not established the foundation for this contention by directing our attention to any decisional law, it is recognized that "... the controlling factors in determining the question of contributory negligence in accident cases of this nature [wandering in darkness] are the degree of darkness *and* the justification for the injured person's presence in the place of danger." *Dively v. Penn-Pittsburgh Corp.*, supra at 70, 2 A.2d at 833. (Emphasis added). However, within the context of the instant appeal, the plaintiffs-appellants' contention that the wife-plaintiff had a "compelling necessity," *Barth v. Klinck*, supra at 618, 62 A.2d at 842, to be in the area of the restroom is without legal and factual impact.

In *Dively v. Penn-Pittsburgh Corp.*, supra, the Court observed: "There is a multitude of cases of this type [darkness] to be found in the reports, but they necessarily depend largely upon their individual facts. However, analysis would seem to justify their classification into two groups. There are those in which a person wanders around in a place absolutely dark and where, though not a trespasser, there is no reasonable necessity for his presence. In such cases recovery is denied: Davis v. Edmondson, 261 Pa. 199; Hoffner v. Bergdoll, 309 Pa. 558; Modony v. Megdal, 318 Pa. 273; McVeagh v. Bass, 110 Pa. Superior Ct. 379; Hardman v. Stanley Co. of America, 125 Pa. Superior Ct. 41. There are other cases where there is some fairly compelling reason for walking in a place which, though dark, is not utterly devoid of light. Under such circumstances, contributory negligence

will not be declared as a matter of law: Reid v. Linck, 206 Pa. 109, Haugh v. Harris Brothers Amusement Co., 315 Pa. 90; Murphy v. Bernheim & Sons, Ltd., 327 Pa. 285; Leckstein v. Morris, 80 Pa. Superior Ct. 352; Rutherford v. Academy of Music, 87 Pa. Superior Ct. 355; James v. Smith, 93 Pa. Superior Ct. 485; Cathcart v. Sears, Roebuck & Co., 120 Pa. Superior Ct. 531." *Id.* at 69-70, 2 A.2d at 833. Further, this Court held in *Devine v. Hollander*, 192 Pa. Superior Ct. 642, 648, 161 A.2d 911, 914-15 (1960) that "... a person may be declared guilty of contributory negligence when he wanders around in darkness in a place where he has no reason to be, such a declaration will not be made if he has a fairly compelling reason to be there *and the place is not utterly devoid of light.*" (Emphasis added) (Citations omitted).

In the present case the evidence establishes that the wife-plaintiff proceeded in "total darkness." While we do not hold that there can never be justification for proceeding when it is "pitch black," the wife-plaintiff simply has not established that her necessity was so compelling that she could not have delayed her trip to the restroom for the time it would take to seek assistance from someone in the hall in order that the hallway might have been properly illuminated. When the wife-plaintiff was deposed she had every opportunity to establish a compelling necessity for venturing into an unfamiliar area that was "pitch black;" she did not do so. The wife-plaintiff had every opportunity to oppose the defendant's motion for summary judgment with affidavits, depositions and interrogatories of her own establishing the kind of compelling necessity which might justify taking this case to a jury; this she did not do. On appeal, the plaintiffs-appellants' brief merely states that the issue of "necessity" is for the jury without establishing the compelling necessity itself.

The wife-plaintiff was obligated to conform to a standard for her own protection. In cases of this nature the standard is clear; "... darkness is ... a warning to

proceed either with extreme caution or not at all...."
*Barth v. Klinck*, supra.[6] In *Phaff v. Gerner*, 451 Pa. 146,
303 A.2d 826 (1973), our Supreme Court noted: " '... [t]he
very mission of the summary judgment procedure is to
pierce the pleadings and to assess the proof in order to
see whether there is a genuine need for trial....' Federal
Rules of Civil Procedure, Rule 56, Notes of Advisory
Committee on 1963 Amendment, 28 U.S.C.A. 416." *Id.* at
151, 303 A.2d at 829. We have "pierced the pleadings"
and having found no genuine issue as to the material
facts or even inferences therefrom, *see Elkay Mfg. Co. v.
Chasco Supply Co., Inc.*, 219 Pa. Superior Ct. 530, 281
A.2d 765 (1971), we believe that the case is "so clear that
there is no room for fair and sensible men to differ on
their conclusions from the available data." *Denver v.
Sharpless*, supra.[7]

The order of the court below granting the defendant's
motion for summary judgment is affirmed.

---

6. In *Rutherford v. Acad. of Music*, 87 Pa. Superior Ct. 355 (1926)
it was stated: "[I]t is true that when one walks when he cannot see
plainly, the exercise of ordinary care requires greater vigilance than
when he can see plainly. The degree of darkness has an important
bearing upon the question of contributory negligence in such a case."
*Id.* at 358.

The plaintiffs-appellants have before us no fact which puts in issue
that the "degree of darkness" in the hallway was anything other than
the "pitch blackness" as stated by the wife-plaintiff. The "degree of
darkness" under the evidence in this case, supports the defendant's
invocation of the general principle that "... darkness is, in itself, a
warning to proceed either with extreme caution or not at all." *Barth v.
Klinck*, 360 Pa. 616, 618, 62 A.2d 841, 842 (1949). Further, there is no
evidence that the ·wife-plaintiff "... tried to feel her way cautiously by
holding onto the side wall ...." *Polm v. Hession*, 363 Pa. 494, 497, 70
A.2d 311, 312 (1950).

7. All of the cases upon which the plaintiffs-appellants rely are
distinguishable from the instant case: *Slobodzian v. Beighley*, 401 Pa.
520, 164 A.2d 923 (1960) (degree of darkness was disputed by the
parties); *Reid v. Linck*, 206 Pa. 109, 55 A. 849 (1903) (the issue was the
defendant's negligence vis a vis the plaintiff's status as invitee or
licensee; no discussion of contributory negligence); *Haugh v. Harris*

CONCURRING OPINION BY CERCONE, J.:

I concur in the result reached by the majority herein.

The law in Pennsylvania concerning venturesome plaintiffs who imprudently wander into unlighted areas is fully set forth in the majority opinion. Nevertheless, I submit that this peculiar kind of tort question may be more cogently and clearly resolved by employing the rubric of assumption of the risk set forth in Sections 496 A-G of the Restatement of Torts, Second. From the majority opinion, it is not altogether clear whether the decision in the instant case rests on the fact that plaintiff voluntarily assumed the risk of the existence of some invisible hazard when she ventured into the darkness in search of the ladies' room, or whether she was contributorily negligent in the manner in which she proceeded. If the former theory is the basis for the decision, Restatement, 2d §§ 496 C & E cover the point and I agree with affirming the lower court's order granting summary judgment for defendant. Especially "enlightening" in this regard are Comment D and Illustrations 7 - 9 to Section 496 E. The call of nature may be powerful indeed, and the obligation for a public hall such as defendant to provide the facilities for its answer is doubtless; however, I agree that, before proceeding into the darkened corridor plaintiff should have ascertained from someone familiar with the premises whether the area could be lighted or was free of danger. Having failed to take this precaution, plaintiff voluntarily assumed the risk of the existence of an unseeable hazard of the type which caused her injury.[1]

_____

*Bros. Am. Co.*, 315 Pa. 90, 172 A. 145 (1934) (distinguished in the text supra).

1. I am not merely attempting to make a semantic distinction. Whether the failure to take some precaution against imperceptible danger is called either contributory negligence or assumption of the risk may affect the outcome of the case. Restatement of Torts, Second §496A, Comment d.

On the other hand, if the majority implies that plaintiff was entitled to proceed because necessity vitiated the requisite voluntariness of her implied assumption of the risk, I disagree that the manner in which plaintiff proceeded can be held to be contributory negligence as a matter of law. The defense of contributory negligence almost invariably raises questions of fact to be resolved by a jury;[2] and, the burden of going forward with the evidence and the risk of non-persuasion rest with the defendant. The question of assumption of the risk aside, I do not think that plaintiff's deposition so clearly manifests negligence that reasonable minds could not differ on that question. Hence, I disagree with so much of the majority opinion which rests the decision in this case on that basis alone.

---

2. See, e.g., *Willetts v. Butler Twp.*, 141 Pa. Superior Ct. 394 (1940).

DISSENTING OPINION BY SPAETH, J.:

I have nothing to add to, nor do I in any respect disagree with, the majority's comprehensive statement of the law. Applying that statement to the facts of the present case, however, I conclude that the motion for summary judgment should not have been granted.

Clearly, the majority is correct that there is no material fact at issue. There is not because (as the majority not only notes but emphasizes[1]) counsel for appellants did nothing; they filed no one's affidavit, and took no one's deposition. Why they did nothing we are left to wonder.

The majority reasons that because there is no material fact at issue, the case is clear. This reasoning, I suggest, compresses two distinct requirements into one. No doubt in most cases where there is no material fact at issue, the case will be clear; but sometimes this will not be so, and this case is one of those times.

---

1. The fact is mentioned in the majority opinion three times.

Specifically: The majority states that "we are faced with the unfortunate but uncontroverted fact that the wife-plaintiff entered a 'pitch black' hallway in the defendant's hall in a manner that evidences her 'total disregard for her own safety.' " (Majority Opinion at 424, footnote omitted.) I agree that it is uncontroverted, *i.e.*, there is no material fact otherwise, that the wife entered a pitch black hallway; I disagree that it is clear from this fact that she acted in total disregard for her own safety.

If the record showed that the wife felt great physical urgency to get to the restroom as soon as possible, and further showed that she had only taken one or two steps into the hallway before she fell down the open stairway, then, I submit, the question of whether she had been contributorily negligent would, under the majority's cases, be for the jury, and summary judgment would be denied.[2] Although the record does not show these facts, neither does it controvert them; if anything, it supports, or more accurately, implies them. Thus, the wife testified:

> "I stood in line to get something to eat for about, oh, close to twenty-five minutes, because, it was a long line and then I proceeded to eat. I was almost finished eating and I wanted to go to the restroom." (Record at 27a).

This implies that she felt some urgency to go to the restroom. Further, when the wife was asked how far she had entered the pitch black hallway, she repeatedly said she could not say. (Record at 28a-30a). What she could say was:

> "I went into an entrance way. It was quite black,

---

2. On the record we do have, the defendant's negligence is so plain that it would seem that gross negligence might have been alleged, *Kasanovich v. George*, 348 Pa. 199, 34 A.2d 523 (1943), in which case the wife-plaintiff's contributory negligence would not be a defense, *Fugagli v. Camasi*, 426 Pa. 1, 229 A.2d 735 (1967).

there wasn't any lights at all. It was very dark. *I bore to my right and went to go into the restroom* and I kept on going that is the last I remember. *It just happened very quickly."* (Record at 28a, emphasis added).

This implies that as she stepped into the hallway she turned right, into what she thought was the entrance to the restroom, and fell.

Granted, a fuller record might show that these implications were incorrect, and that in fact the wife-plaintiff was contributorily negligent. On the present meagre record, however, it is not clear what happened. Therefore, even though there is no material fact at issue, the motion for summary judgment should not have been granted.

It is possible to regard this conclusion as too protective of the wife-plaintiff. One might say that because her counsel did nothing to show how she felt, or how many steps she took, we should assume that the facts on those matters are against her. In effect, that is what the majority does say, for otherwise it could not find the case to be clear. My difference with the majority is in the end a matter more of emphasis than of fundamental disagreement. Frequently, there is a tension between a judge's obligation to respect the adversary nature of our system of litigation and his anxiety that justice be done. To affirm the order of the lower court is consistent with the adversary nature of our system. I worry, however, that it is too consistent, and that the order represents an injustice.

I would reverse.

WATKINS, P.J., and HOFFMAN, J., join in this opinion.