458 A.2d 602

**Thomas MURPHY, Appellant,**

**v.**

**PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, a SUBSIDIARY OF PRUDENTIAL INSURANCE COMPANY OF AMERICA.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1982.

Filed April 8, 1983.

Petition for Allowance of Appeal Granted Sept. 1, 1983.

 

James L. Womer, Philadelphia, for appellant.

Vincent R. Garvey, Jr., Philadelphia, for appellee.

Before CERCONE, President Judge, and McEWEN and HOFFMAN, JJ.

CERCONE, President Judge:

Plaintiff-appellant, Thomas Murphy, takes this appeal from the order of the lower court granting summary judgment in favor of defendant-appellee and against plaintiff-appellant in his suit to recover benefits under his automobile insurance policy. Appellant argues that the court abused

its discretion in granting summary judgment because the court's order was based on a misinterpretation of the relevant statute of limitations provision of the Pennsylvania No-Fault Motor Vehicle Insurance Act.[1] We agree with appellant and reverse the order of summary judgment and remand for trial.

The rule of law to be applied when a summary judgment is requested was reiterated by this Court in *Petraglia v. American Motorists Insurance Company*, 284 Pa.Superior Ct. 1, 3, 424 A.2d 1360, 1361 (1981), aff'd per curiam, 498 Pa. 32, 444 A.2d 653 (1982), wherein we stated:

> Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.Civ.P. 1035(b). Summary judgment can only be granted in the clearest of cases. *See, e.g., Schacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968). Additionally, the evidence must be viewed in the light most favorable to the non-moving party and all doubts must be resolved against the moving party. *See Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979); *Just v. Sons of Italy Hall*, 240 Pa.Super. 416, 368 A.2d 308 (1976).

See also *Williams v. Keystone Insurance Company*, 302 Pa.Superior Ct. 44, 46, 448 A.2d 86, 87 (1982). With an eye to this standard, we will look at the facts in the instant case. On March 16, 1977, appellant was injured when the vehicle in which he was riding became involved in an automobile accident. The next day, on March 17, 1977, appellant received the first of a series of treatments by various medical doctors. (At the time of the commencement of appellant's law suit, filed in May 18, 1979, the most recent of these treatments was on May 16, 1977). Appel-

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 *et seq.* (Supp.1981–82). Hereinafter referred to as the No-Fault Act or the Act.

lant retained counsel shortly after the accident and on November 15, 1977, appellee company sent a letter to counsel acknowledging receipt of appellant counsel's letter dated October 14, 1977. Appellee's letter further stated: "Please be advised that this is our first notification of the above captioned loss." The letter included with it a "No-Fault Application" which appellant was to fill out and return.

Thereafter, on May 31, 1978, appellee company received appellant's "No-Fault application", dated May 29, 1978. In the form, appellant gave all of the requested information, including a claim of injury to his "neck, back, leg, knee, head, etc." Appellant further indicated that he had received treatment for these injuries and that the condition would probably require further treatment. Appellant, however, did not attach any medical bills to this application.

On March 27, 1979, appellant's counsel sent to appellee "the applicable bills, reports, wage information, etc." Counsel further wrote, "This may not be the complete and total list of expenses incurred, but we would request payment for those enclosed and will submit any additional expenses at a further date." Approximately, one month later, on April 26, 1979, appellee responded with this letter:

We are in receipt of your letter dated March 27, 1979 which we received on April 16, 1979. Please be advised that we received no bills or reports prior to this date. As you know the Statute of Limitations for Personal Injury Protection claims is two years after the date of loss. It appears that since this accident occurred on March 16, 1977, and treatment started 3/21/77, the Statute of Limitations has expired. We must therefore, respectfully, decline payment.

Following appellee's denial of his claim, appellant filed the herewithin action on May 18, 1979. After the filing of an answer and depositions, appellee made a motion for summary judgment. The court granted the motion on the basis of the fact that the accident occurred on March 16, 1977 but the suit was not filed until May 18, 1979, which was more than two years from the date of the accident.

■ Appellant now argues that the court's interpretation of the No-Fault Act's statute of limitations was not in line with our decision in *Myers, et al. v. USAA Casualty Insurance Co.*, 298 Pa.Superior Ct. 366, 444 A.2d 1217 (1982) in that the court failed to consider that the controlling date was not the date of the accident but was rather the date that the appellee breached its contractual obligation. We agree.

In *Myers*, we quoted from section 106(c) of the No-Fault Act, which provides:

(c) Time limitations on actions to recover benefits.—
(1) If no-fault benefits have not been paid for loss arising otherwise than from death, an action therefore may be commenced not later than two years after the victim suffers the loss and either knows, or in the exercise of reasonable diligence should have known, that the loss was caused by the accident, or not later than four years after the accident, whichever is earlier.

In interpreting this section we said:

It is clear by reading the language of section 106(c) that the legislature did not intend the limitations period to begin to run on the date of the injury as appellee [insurance company] suggests. Section 106(c) establishes a two year statute of limitations and a four year statute of repose. *By creating an ultimate limitation of four years, the legislature obviously contemplated that the two year statute of limitations would begin to run at some point between that ultimate limitation date and the date of the injury. Therefore, the injury could not have been intended to be the triggering event for the limitations period.*

*Id.*, 298 Pa.Superior at 373, 444 A.2d at 1221. (emphasis added).

■ The *Myers* Court then went on to note that the cause of action at issue was predicated upon an alleged breach of the insurer's contractual duty to pay no-fault benefits. As such, the common law rule is that the statute of limitations in an action for breach of contract does not begin to run

until the occurrence of the breach, which is consistent with the general rule that a statute of limitations does not begin to run until the accrual of the cause of action. Turning to section 1009.103 the No-Fault Act, we saw that it contained this definition of "loss":

"Loss" means accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle consisting of, and limited to, allowable expense, work loss, replacement services loss, and survivor's loss.

The *Myers* Court then concluded:

*We believe that "loss" as that term is defined in the No-Fault Act must be equated with the common law concept of breach of contract because until such breach occurs, the claimant does not know that he has incurred any economic detriment.* Moreover, until a breach has occurred, no cause of action based on contract exists and, as we concluded in [*Bond v. Gallen,* 292 Pa.Superior Ct. 207, 437 A.2d 7 (1981)], to hold that the limitations period begins to run prior to the existence of a cause of action would be unjust and unnecessary.

*Id.,* 298 Pa.Superior at 374, 444 A.2d at 1221 (emphasis added).

■ Thus, under *Myers,* it is apparent that appellant's "loss" for purposes of the No-Fault Act arose when appellee refused payment on April 26, 1979. Appellant's suit, which was filed on May 18, 1979, was clearly timely under the *Myers* Court's interpretation of the No-Fault Act, since the suit was filed within two years of the "loss" and not more than four years from the date of the accident, which was March 16, 1977. Accordingly, we find the lower court's ruling to be contrary to *Myers* and, accordingly, we reverse.[2]

2. Because of our disposition of the above issue, we need not address appellant's two remaining issues which were:
(1) Whether the court below, in the absence of notice and an opportunity to be heard on the merits of appellee's motion for summary judgment, abused its discretion and erred at law in entering summary judgment.

Summary judgment is reversed and vacated and case is remanded for trial. We relinquish jurisdiction.