CHONG KEE MIN, Kyung Il Min, Kyung Nam Min, Kyung Soon Min, Kyung Suk Min, Kyung Hee Min, and Kyung Ryun Min, Plaintiffs–Appellants,

v.

WUN SIK HONG and Kyung Sun Hong, Defendants–Respondents.

No. 16887.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 10, 1991.

172

Roger Andrew Carnahan, Carnahan, Carnahan & Hickle, Rolla, for plaintiffs–appellants.

Gerard T. Noce, Adrian P. Sulser, Evans & Dixon, St. Louis, for defendants-respondents.

MAUS, Presiding Judge.

In this action, the plaintiffs seek to recover for the wrongful death of their decedent who fell down the basement stairs in the home of the defendants. The plaintiffs' verdict directing instructions were drawn from MAI 22.03. Recovery was premised upon "an unlighted hallway adjacent to an unlatched door and stairway" resulting in defendants' premises not being reasonably safe. The trial court gave an instruction drawn from MAI 3d 32.28 and 20.02 tendered by the defendants which submitted the decedent's comparative fault. The form of verdict submitted by the plaintiffs was MAI 37.07 (1986 New) (Modified). The jury returned a verdict assessing zero

percent of fault to each defendant and to the decedent. The plaintiffs present four points. The following is an outline of the facts.

The plaintiffs are Chong Kee Min, Kyung Il Min, Kyung Nam Min, Kyung Soon Min, Kyung Suk Min, Kyung Hee Min, and Kyung Ryun Min. They are the husband and six of the seven children of the decedent. Defendant Kyung Sun Hong is the remaining child of the decedent. Defendant Wun Sik Hong is her husband.

The decedent, Soon Hak Kim (Mrs. Kim), and her husband lived in Seoul, South Ko-

rea. The decedent was asked by the defendants to come to their home in Rolla, Missouri, and help them with their baby after it was born. Mrs. Kim flew from Korea to St. Louis on Friday, June 19, 1987. She was picked up at the airport by her son-in-law and they drove to Rolla to a restaurant where defendants were employed. Mrs. Hong picked her up at the restaurant and went to the defendants' home around noon.

The home of the defendants had six rooms and a basement. The following is a floor plan of that home.

The area that is cross-hatched is referred to as a hall. There was no light fixture in the hall. It was illuminated by lights in the dining room or in the front room when those lights were on. When only the light in the living room was on, the hall was virtually dark. Or, as Mrs. Hong said, "I can see out. I know how to turn on the lights, and I could—I can see a little bit."

Each of the doors opening from the hall was similar in appearance and had the same type doorknob. With the exception of the closet, upon opening each door there was an adjacent light switch to illuminate the room being entered or the stairway. The closet had an automatic light switch. There was a latch on the door to the stairway. There was testimony the latch was

for security against unauthorized entry from the basement.

When Mrs. Kim and Mrs. Hong arrived at the house, Mrs. Kim's bags were taken to the baby's bedroom where she would be sleeping. They left the house to go to Mrs. Hong's doctor. They returned later in the afternoon. Mrs. Kim then took a nap for several hours while Mrs. Hong returned to the restaurant to work. She awoke around 8 p.m. as her daughter arrived home. Mrs. Kim, Mrs. Hong and Mrs. Hong's niece watched television that evening. Mrs. Hong took her niece home before Mr. Hong returned from work around 11 p.m. The three of them ate a late supper. Mr. Hong went to bed in the master bedroom.

Mrs. Kim and her daughter stayed up to talk in the living room. Around midnight, they called their family in Korea. Mrs. Kim decided to change into some more comfortable clothes. She walked from the living room through the dining room to the hall. The dining room light was not on. After Mrs. Kim entered the hall, Mrs. Hong heard a loud noise. After looking for her mother in the bedroom and bathroom, Mrs. Hong discovered that the basement door was ajar. Mrs. Kim was at the bottom of the stairs to the basement. After being taken to a hospital in Rolla and then flown to University Hospital in Columbia, Mrs. Kim died from her injuries approximately 14 hours after the fall.

█ The plaintiffs' first point is "[t]he trial court erred in instructing the jury to consider the comparative fault of the decedent Soon Hak Kim because there was no evidence that decedent was negligent". To support this point, they cite the following evidence. In Korea, houses do not have stairways leading from the living area to a basement. All of the doors in the hall looked alike. Neither defendant warned the decedent that one of the doors opened to a stairway to the basement. No one showed the decedent the light switch in the dining room. There was no switch or light fixture in the hall.

Nevertheless, the defendants argue the evidence would justify the submission of the comparative fault instruction. They emphasize the following evidence. The decedent had been shown to her room on two occasions. She had been alone in the house for several hours. She walked through an unlighted dining room and proceeded down an unlighted hall, opened a door and stepped into an unlighted stairway. She did not request aid or advice concerning the location of a light switch. The defendants' argument has merit.

There is a large body of law dealing with the entry into or walking in an unlighted area. Generally speaking, it is held that

"[D]arkness, in itself, constitutes a warning to proceed either with extreme caution or not at all. *Barth v. Klinck*, 360 Pa. 616, 62 A.2d ·841 (1949)." *Felix v. O'Brien*, 413 Pa. 613, 199 A.2d 128, 130 (1964).

"Moreover, there is no implied assurance of safety when the premises are dark." *Just v. Son's of Italy Hall*, 240 Pa.Super. 416, 368 A.2d 308, 314 (1976).

See also *McDevitt v. Terminal Warehouse Co.*, 304 Pa.Super. 438, 450 A.2d 991 (1982). Annot., Premises Liability: Proceeding in the Dark Across Interior Premises as Contributory Negligence, 28 A.L.R.3d 605 (1969). Cf. *Schlicht v. Thesing*, 25 Wis.2d 436, 130 N.W.2d 763 (1964).

In some circumstances it has been held " ' ... " 'that one who follows an unfamiliar course in the dark or steps into *darkened and unfamiliar* space, relying upon his sense of touch instead of obtaining and using adequate lighting facilities, and sustains personal injuries, is guilty of contributory negligence *as a matter of law.* " *Just v. Sons of Italy Hall*, 240 Pa.Super. 416, 422, 368 A.2d 308, 312 (1976) (emphasis in original), quoting *Barth v. Klinck*, 360 Pa. 616, 618, 62 A.2d 841, 842 (1949).' " *McDevitt v. Terminal Warehouse Co.*, supra 450 A.2d at 995 (emphasis added).

Upon facts very similar to those in this case, a plaintiff has been held to have been contributorily negligent as a matter of law. *Just v. Son's of Italy Hall*, supra. Also see *Felix v. O'Brien*, 413 Pa. 613, 199 A.2d 128 (1964).

However, it is more often held that whether or not a plaintiff has been contributorily negligent in proceeding in the dark, is a question for the jury.

"Whether a person of ordinary prudence, attempting to use an unlighted stairway, is guilty of contributory negligence is a question for the jury. (citations omitted)." *Gentili v. Dimaria*, 89 S.W.2d 93, 95 (Mo.App.1936).

*Swanson v. Godwin*, 327 S.W.2d 903 (Mo. 1959); *Dean v. Safeway Stores*, 300 S.W.2d 431 (Mo.1957); *McFarland v. Sears, Roebuck & Co.*, 91 S.W.2d 615 (Mo.App.1936).

■ Under the doctrine of comparative fault, it is the responsibility of the jury to assess the relative fault of the parties in a tort action. *Patton v. May Dept. Stores Co.*, 762 S.W.2d 38 (Mo. banc 1988). The defendants correctly state that, in determining the submissibility of fault on the part of the decedent, the court must view the evidence and inferences therefrom in the light most favorable to the defendants and disregard all contrary evidence and inferences. *Allen v. Perry*, 722 S.W.2d 98 (Mo.App.1986). When the evidence is so considered, the fact that the decedent, under the circumstances, proceeded down a dark hall and stepped into an unlighted stairway is sufficient to support the instruction submitting the determination of the decedent's fault to the jury.

■ Moreover, any error by the trial court in submitting a comparative fault instruction would have been harmless. The jury found that neither defendant was at fault in the death of Mrs. Kim. "[A]n error in giving a comparative fault instruction is harmless if the jury found no negligence on the part of defendant[s]." *Hyman v. Robinson*, 713 S.W.2d 300, 301 (Mo.App.1986), citing *Koch v. Bangert Bros. Road Builders, Inc.*, 697 S.W.2d 315 (Mo.App.1985). See also *Cornell v. Texaco, Inc.*, 712 S.W.2d 680 (Mo. banc 1986); *Barnes v. Tools & Machinery Builders, Inc.*, 715 S.W.2d 518 (Mo. banc 1986). Plaintiffs' first point is denied.

■ The plaintiffs' second point is that the trial court erred in excluding the testimony of decedent's daughter Kyung Hee Min that she incurred "travel expenses" of $3,500 because this testimony was admissible as evidence of damages. The point as stated belies the proffered deposition testimony of Kyung Hee Min. That testimony was that she spent $3,500 for air fare to return her mother's ashes *and* for a contribution to a church in Korea. The testimony did not specify the separate amount for either purpose. During counsel's argument concerning the admissibility of that testimony, the trial court remarked that the contribution was not a proper item of damage and evidence of the total amount was inadmissible. Perhaps misunderstanding the basis for that remark, the parties subsequently have argued whether or not the testimony is barred by the best evidence rule. The decision of the trial court to exclude that testimony is not error if it can be sustained upon any basis. *Missouri Farmers Ass'n v. Kempker*, 726 S.W.2d 723 (Mo. banc 1987).

However, further discussion of the point is not necessary. "Refusal to admit evidence does not constitute reversible error unless it would have changed the result reached." *Green v. Stanfill*, 641 S.W.2d 490, 492 (Mo.App.1982). Here, any error would be "harmless in view of the fact that the jury returned a verdict for ... defendants and therefore never reached the issue of damages." *Sciortino v. MacGee*, 633 S.W.2d 134, 137 (Mo.App.1982). Plaintiffs' second point is denied.

■ The plaintiffs' third point is that the trial court erred in denying their motion under Rule 61.01(c) for the payment of expenses of making proof because the defendants did not admit the fairness and reasonableness of medical bills and the funeral bill for the decedent. The bills referred to were those of the University of Missouri Hospital, University Physicians, Phelps County Regional Medical Center, and pathology and x-ray reports. The defendants admitted the genuineness of the bills, but denied they were reasonable. The plaintiffs sought reimbursement for the expense of taking the depositions of an insurance expert, a doctor in Columbia, and the funeral director. At trial, the plaintiffs

read the deposition of the insurance expert who concluded that all of the medical and hospital bills were reasonable in amount. They also read the deposition of the funeral director stating his funeral bill was reasonable in amount. At the conclusion of the trial, the plaintiffs presented their motion for payment of the expenses under Rule 61.01(c). The court, without additional evidence, heard arguments of counsel and denied the motion.

In support of their point, the plaintiffs conclude there is no reasonable basis to say the bills would be unfair or unreasonable and that the defendants offered no evidence to establish the same. They emphasize that portion of Rule 61.01(c) which says: "[T]he court *shall* make the order ...."

In their argument to support their point, the plaintiffs do not take cognizance of the four bases set forth in Rule 61.01(c) upon which the court may decline to enter the order. The fourth basis is: "there was other good reason for the failure to admit." Rule 61.01(c). This proviso has been considered to vest the trial court with discretion in whether or not to award expenses. *Ruge v. Posey*, 114 Idaho 890, 761 P.2d 1242 (App.1988); *Stokes v. Clark*, 390 So.2d 489 (Fla.App.1980); *Matter of Estate of Smith*, 201 Ill.App.3d 1005, 147 Ill.Dec. 398, 559 N.E.2d 571 (1990).

The trial court did not expressly declare the grounds for the denial of the motion. In its discussion with counsel, the court did observe that the jury could well find that a bill for one day's hospitalization and observation of a patient in the amount of $2,700.58 was not reasonable. The trial court could well have considered the fact that the charges of the hospital were not itemized but summarized under categories such as "clinical pathology" for $397.90. The trial court could also have considered the fact the funeral director lived in the town where the trial was held and could have been called as a witness rather than deposed. It could also have questioned the necessity of deposing the doctor in Columbia. His testimony has been omitted, at the request of the plaintiffs, from the record before this court. The trial court could also have considered that the requests for admissions went not only to the amount of the bills but, that the service reflected on the bills was "reasonably necessary." The record before this court contains no proof of that element. The plaintiffs cite no cases in support of their point. Brief research discloses there is a body of authority dealing with the questions raised by such a motion. See *Linde v. Kilbourne*, 543 S.W.2d 543 (Mo.App.1976); *Briggs v. King*, 714 S.W.2d 694 (Mo.App. 1986); Annot., Admissions Demand—Scope, 42 A.L.R.4th 489 (1985). Because the plaintiffs cite no authority, the point could be deemed to have been abandoned. *Boswell v. Steel Haulers, Inc.*, 670 S.W.2d 906 (Mo.App.1984). In any event, there was evidence from which the trial court could conclude "there was other good reason for the failure to admit." The point is denied.

Plaintiffs' final point on appeal is that the trial court erred in the use of the verdict form based upon MAI 37.07 because such form allows improper argument by defense counsel and a finding that decedent's death resulted from an unavoidable accident. Plaintiffs' claim has no merit. Plaintiffs did not object to the closing argument of defense counsel during trial. As a result, any allegedly improper argument can be reviewed only as plain error. Rule 84.13(c). *Lawton v. Jewish Hosp. of St. Louis*, 679 S.W.2d 370 (Mo.App.1984); *Sherpy v. Bilyeu*, 608 S.W.2d 521, 523 (Mo. App.1980). The argument complained of does not reach that standard. Further, MAI 1.01 and its prohibition against unavoidable accident instructions "[does] not change the substantive right of a defendant to deny the claim of negligence against him, to present evidence that he is free of such negligence, and to argue the effect of this evidence to the jury." *Coffel v. Spradley*, 495 S.W.2d 735, 740 (Mo.App. 1973). Also see *Cook v. Cox*, 478 S.W.2d 678 (Mo.1972); *Hoehn v. Hampton*, 483 S.W.2d 403 (Mo.App.1972). Defense counsel's argument did not exceed these boundaries.

■ The verdict form submitted to the jury was proper. There was evidence to support the instruction submitting comparative fault of the decedent. In a negligence case, "where there is evidence from which a jury could find that plaintiff's conduct was a contributing cause of his damages ... the case should be submitted to the jury under the instructions and verdict forms approved ... for use in comparative fault cases ...." *Earll v. Consolidated Aluminum Corp.*, 714 S.W.2d 932, 937 (Mo.App.1986). Plaintiffs' fourth point is denied and the judgment of the trial court is affirmed.

PREWITT and CROW, JJ., concur.