364 A.2d 495

GIRARD TRUST BANK, Appellant,

v.

LIFE INSURANCE COMPANY
OF NORTH AMERICA.

Superior Court of Pennsylvania.

Sept. 27, 1976.

Matthew J. Broderick, Philadelphia, for appellant.

Francis E. Shields, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

154

WATKINS, President Judge.

This case comes to us on appeal from the Court of Common Pleas of Philadelphia, Civil Law Division, and involves an appeal from the court's granting of preliminary objections in the nature of a demurrer in favor of the defendant-appellee.

Appellant-plaintiff ("Girard") initiated an action in assumpsit against appellee-defendant, Life Insurance Company of North America ("LINA") on December 3, 1974, alleging in its complaint that four group creditor life insurance policies were issued by LINA to Girard on August 1, 1959, August 14, 1959, June 1, 1960 and November 1, 1968 and that certain rebates on such policies were due to Girard pursuant to the insurance contract's provisions. Each of the policies was renewed annually until June 30, 1973 when three were terminated and August 31, 1973 when the fourth was terminated.

One policy contained the following provision regarding the issue in the case:

"At the end of each policy year, the Company [LINA] *may* allow to the Creditor [Girard] an experience credit in such amount, if any, as may be determined in accordance with an experience rating plan which the Company then has in effect. The amount of each such experience credit, if any, shall be paid in cash to the Creditor, or upon request of the Creditor, shall be applied against the payment of any premium or premiums." (Emphasis ours.)

The other three policies contain the following language:

"At the end of the first policy year, and on any premium due date thereafter but not more than once in any twelve month period, premiums shall be subject to such changes as the Company [LINA] *may* make. Any reduction in the premium rates so made for any policy year may also be made retroactive for the previous year and, in which event, a refund of premium

for that year shall be made to the Creditor [Girard]. No increase in premium rates shall be retroactive." (Emphasis ours.)

After the initial issuance of the first two policies, riders were executed providing that those policies:

". . . shall be considered as a single policy for the purpose of applying the Company's [LINA's] experience rating plan."

Appellant's complaint alleged that, pursuant to the foregoing policy provisions and riders and insurance industry custom, usage and practice, appellee [LINA] had a duty to make annual retroactive premium refunds to appellant based on appellee's claims experience under the policies and that appellee refused to make any such refunds. Appellee filed preliminary objections to the complaint alleging that the complaint failed to state a cause of action upon which relief could be granted because the language in the foregoing provisions was permissive only and not mandatory with respect to the making of retroactive premium refunds and that the statute of limitations had run. The nexus of appellee's assertions was that since the word "may" was used in the foregoing provisions, appellee was under no duty to make the premium refunds and that the decision as to whether to make such refunds rested in the sole discretion of appellee. The court below granted appellee's preliminary objections in the nature of a demurrer and dismissed the action for failure to state a cause of action upon which relief could be granted. In light of this ruling the court did not pass on the statute of limitations issue.

Appellant's position is that although the word "may" was used in the policy the appellee is under a duty to make the premium refunds because to hold otherwise would render the language in the policy regarding such refunds nugatory since a party could always make such refunds if it so desired and it would not have been necessary to include such terms in the policy if the making of

the refunds were left solely to the discretion of the appellee. Appellant reasons that therefore the court should have read the contract as a whole, giving effect to the policy terms, and construing the word "may" to mean "shall" or "must". Appellant points out in its brief that creditor group life insurance policies differ from other types of life insurance policies in that while the policy is between the creditor and the insurance company, the policy insures the lives of a group of debtors, each to the amount of his or her outstanding indebtedness, and does not insure the creditor. Individuals become members of a given group by reason of a debtor-creditor relationship with the lending institution and not by reason of the risk potential which any of them exhibits. Therefore during the course of any given policy time period, the members of this group of debtors will vary, the individual characteristics of any given debtor as they relate to the risk involved will vary, and the amount of outstanding debt as it relates to any individual risk will also vary. Because of this the more commonplace methods of actuarial allocation of risk and premium costs often are not suited to creditor group life insurance plans. With this in mind the insurance industry has developed its own custom, usage and practice for the premium pricing of such policies. This custom or usage provides for premium adjustments to reflect the experience of the individual group as well as the experience of the insurer's group operations as a whole. See Davis W. Gregg, "Group Life Insurance, An Analysis of Concepts, Contract Costs and Company Practices", 3d Edition (The S. S. Huebner Foundation For Insurance Education, University of Pennsylvania, 1962). Since the various factors which will affect any individual such plan are not known at the beginning of any policy year, when premiums generally become due, it is necessary to provide for a rebate plan in the policy in order to adjust the policy premiums. The formula for such a premium adjustment is necessarily complex. In

any given year premium refunds may or may not be warranted depending on the amount of premiums paid, the incurred claims, reserves, taxes and administrative costs incurred by the insurer. Appellant argues that since the insurance industry has adopted such a method of premium computation regarding creditor group life insurance policies and since the policies in question do include references to such practices that a reading of the policies as a whole will lead to the conclusion that the premium rebate provisions are mandatory and not merely permissive.

Appellee argues that the policy provides in clear and unambiguous terms that the rebate provisions are merely permissive because of the use of the word "may", that any evidence of the customs or usage of the insurance industry would directly contradict the clear and unambiguous terms of the contract, that there was no inequality of bargaining power in executing the contract because Girard Trust Bank is a large, urban financial institution with access to legal advice and that therefore the court below was correct in holding the provisions to be merely permissive in nature and in dismissing the complaint.

In deciding whether the demurrer to a complaint was properly sustained, we must accept as true all the well-pleaded facts in the complaint and all inferences reasonably deducible therefrom. All doubts must be resolved in favor of overruling the demurrer. *Hoffman v. Misericordia Hospital*, 439 Pa. 501, 267 A.2d 867 (1970). Appellant argues that the court below erred in sustaining appellee's demurrer because the custom and usage of the insurance industry were placed into issue by being pleaded in the complaint and the court did not consider them in dismissing the complaint. However, a demurrer, while it admits all the well-pleaded facts of the complaint, does not admit the pleader's conclusions of law. *Hoffman v. Misericordia Hospital, supra.* Custom and

usage may reflect on the interpretation of contract language but cannot be used to vary or abrogate the terms of a written contract provision. *Chung v. Park*, 369 F. Supp. 959 (D.C.Pa.) 1974. Therefore if the terms of the written contract are clear and unambiguous custom and usage, a type of parol evidence, are not admissible to interpret the contract and their inclusion in the plaintiff's complaint, in that instance, would amount to conclusions of law. The appellee, in its preliminary objections, is admitting that such custom and usage exists but is taking the position that the clear, unambiguous terms of the contract preclude their admission. Thus the entire matter revolves around the use of the word "may" as employed in the insurance policies.

Appellant argues that if the court below was correct in its ruling then the entire reference to premium rebates in the policies is meaningless. It is true that contract terms will not be construed in such a manner so as to render them meaningless. *Stern Enterprises, Inc. v. Penn State Mutual Insurance Company*, 223 Pa.Super. 410, 302 A.2d 511 (1973). However, The Pennsylvania Insurance Department Act of May 17, 1921 in § 635 and § 636, Act of May 17, 1921, P.L. 789, Art. VI, § 635, 40 P.S. 275 and Act of May 17, 1921, P.L. 789, Art. VI, § 636, 40 P.S. 276, expressly prohibits the paying of rebates or credits to the insured unless they are provided for in the insurance contract itself. Therefore appellee would not have been able to make any rebates to appellant at all in the absence of such language in the insurance contract whether it wanted to or not. As such the references to such rebates in the insurance contracts are not rendered meaningless by a permissive interpretation of the word "may" and the mere inclusion of such terms in the contracts does not mandate a finding that the appellee was under a duty to make such rebates. For that reason the mere fact that the rebate terms exist shed lit-

tle light on the proper interpretation of the word "may" in the contract.

The word "may" has been defined as:

"An auxiliary verb qualifying the meaning of another verb by expressing ability, contingency, liability, possibility or probability. . . . . Ordinarily a permissive, rather than a mandatory, term in a statute. . . . . Discretionary in its grammatical sense but subject to construction as mandatory where the sense of the entire context impels such construction . . ." *Ballantine's Law Dictionary* (Bancroft-Whitney Co. 1966) 3rd Ed., p. 785, Col. 1.

There have been numerous cases in Pennsylvania which have construed the word "may" in its mandatory sense. See *Seligsohn Appeal*, 410 Pa. 270, 189 A.2d 746 (1963); *Commonwealth ex rel. Fox v. Swing*, 409 Pa. 241, 186 A. 2d 24 (1962); *Fame Insurance Company's Appeal*, 83 Pa. 396 (1877); all cited by appellant. However, in many such cases the interpretation of the word involved statutory or constitutional construction. *Seligsohn Appeal, supra* and *Com. ex rel. Fox v. Swing, supra.* Courts have long recognized that the word "may" when used in a statute granting authority to a public official is frequently imperative rather than discretionary. In that context the word "may" means the same as the word "shall". *Hotel Casey Co. v. Ross*, 343 Pa. 573, 23 A.2d 737 (1942). In *Fame Insurance Company's Appeal, supra,* the word "may" was construed as mandatory when the entire contract would have been rendered nugatory had it been given its permissive construction. The language at issue in that case provided that "losses, if any are payable . . . . at such time and in such manner as the . . . . company may pay". The court held that in the event that the word "may" was construed in its permissive sense in that case the entire insurance contract was nugatory because then there would be no consideration for the insured's paying the premi-

ums.   Because of the prohibition of the paying of rebates to insureds in the Pennsylvania statutes in the absence of policy language to that effect, we have already determined that a permissive construction of the word "may" is consistent with the wording of the insurance contract. It must also be noted that the rebate provision in this case does not in any manner affect the basic obligation of appellee to pay for losses arising out of the contract. Therefore there is no lack of mutuality in the contract. Were we to construe the word "may" in a mandatory sense in this situation it would be difficult to imagine a situation where the word could be construed in its permissive sense.   Such a construction would effectively make the word "may" synonymous with the words "shall" or "must" in virtually all contracts.   The effect would be to ignore the fact that the preferred meaning of the word is that it is permissive. *Ballantine's Law Dictionary*, supra.   This we refuse to do.   Because there was no inequality of bargaining power in the execution of the contract between the parties in this case and because the normal, preferred use of the word "may" is that it is permissive in nature we hold that the court below was correct in its determination of the matter.

Order affirmed.

SPAETH, J., files a dissenting opinion in which HOFFMAN and CERCONE, JJ., join.

SPAETH, Judge (dissenting).

I do not think the majority has answered Girard's argument that no one would bargain for a provision that could be applied, as the majority holds, at the whim of the insurer.

In the first policy quoted by the majority, the first "may" can sensibly be read as setting forth the agreement required by the statute to escape the prohibition

against rebates and credits, and the second "may" as expressing capability. Thus the first sentence could be paraphrased: "At the end of each policy year, the Company is permitted, as The Insurance Department Act says <u>may be done by agreement,</u> to allow to the Creditor an experience credit in such amount, if any, as is able to be determined in accordance with an experience <u>rating</u> plan which the Company then has in effect." (Paraphrasing underlined.) This implies that the Company will have an experience rating plan in effect. It is at least not clear that the Company may choose to have no experience rating plan in effect, and extrinsic evidence of custom would have to be supplied on that point.

With this reading, the second sentence of the first policy makes sense. The sentence is, "The amount of each such experience credit, if *any*, shall be paid . . . ." (Emphasis added.) "If any" means "if *there is* any". If the majority's reading were correct, the sentence should read, ". . . experience rating, if *allowed*. . . ."

In the other three policies quoted by the majority, the first "may" seems an imprecise future tense rather than a grant of an option. Furthermore, the language quoted appears to be meant to state when and in what manner premium adjustments are to be made, not to establish either mandatory or permissive experience rating refunds. If my references to imprecision and apparent meaning seem unkind, consider the following: "Any reduction in the premium rates so made for any policy year may also be made retroactive for the previous year *and, in which event,* a refund of premium for that year shall be made to the Creditor." (Emphasis added.) *See* H. W. Fowler, *Modern English Usage* 710 (1926).

The majority recognizes that "[a]ll doubts must be resolved in favor of overruling the demurrer." 243 Pa.Su-

per. at 157, at 498. It does not appear to me to have followed that rule.

The order sustaining the demurrer should be reversed.

HOFFMAN and CERCONE, JJ., join in this opinion.