517 A.2d 1348

**Michael STEINER, a minor by Anna STEINER, his Guardian, and Douglas Steiner, a minor by Anna Steiner, his Guardian, Appellants,**

v.

**The BELL TELEPHONE COMPANY OF PENNSYLVANIA, Appellee.**

Superior Court of Pennsylvania.

Argued April 7, 1986.

Filed Nov. 18, 1986.

506

Kenneth W. Behrend, Pittsburgh, for appellants.

Jeffrey J. Leech, Pittsburgh, for appellee.

Before CIRILLO, President Judge, and BROSKY, ROWLEY, WIEAND, MONTEMURO, BECK, TAMILIA*, POPOVICH and JOHNSON, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

The sole issue raised in this appeal is whether Pennsylvania should recognize a cause of action by a child for loss of parental consortium when the parent is injured by a third-party tort-feasor's negligence. For the reasons set forth herein, we affirm the order of the trial court and refuse to recognize such a cause of action.

On December 29, 1981, the two minor appellants [1] were at home with their mother when someone broke into the house. Hearing the intruder's footsteps, the appellants' mother dialed the Bell Telephone Company's directory assistance number and was placed on hold twice by the operator before being connected with the police only seconds before the intruder interrupted her telephone call and raped her. The assailant was not apprehended. Because of the incident, appellants' mother is allegedly suffering emotional problems which are a contributing factor to the marital discord of appellants' parents.

The appellants sued Bell Telephone Company on the theory that it was liable to them for the injury to their "family relationship" resulting from their parents' marital breakdown caused by the criminal attack on their mother which could have been impeded had appellee not negligently handled their mother's telephone call. On March 16, 1984,

---

* Judge Tamilia did not participate in the decision of this case.

1. Appellants in this action are the two minor children, Michael and Douglas Steiner. Appellants improperly characterize their parents, Anna and David Steiner, as plaintiffs in paragraphs one and five of their complaint. However, the claims of the parents, Anna and David Steiner, were raised in a separate complaint. The children's complaint and that of the parents were consolidated in the trial court. Although the children's complaint was dismissed on preliminary objections, the parents proceeded to trial which resulted in a jury verdict in favor of Anna for $25,000 and in favor of David for $12,500. Thus, the claims of the parents are not involved in this appeal.

the trial court granted appellee's preliminary objections in the nature of a demurrer and dismissed appellants' complaint for failure to state a legally cognizable cause of action. Appellants filed a timely appeal from the order of March 16, 1984, and the case was certified to be argued before the court *en banc.*

On our review of an order sustaining preliminary objections, we must determine whether the facts averred are sufficient to establish a legal cause of action. *Monti v. Pittsburgh,* 26 Pa.Cmwlth. 490, 364 A.2d 764 (1976). Only if it is clear and free from all doubt will we affirm the order sustaining the preliminary objections, and any doubt must be resolved in favor of overruling the preliminary objections. *Zelik v. Daily News Publishing Co.,* 288 Pa.Super. 277, 431 A.2d 1046 (1981); *Girard Trust Bank v. Life Insurance Co.,* 243 Pa.Super. 152, 364 A.2d 495 (1976).

The proposed cause of action for a child's loss of consortium has numerous elements. Those courts which have recognized the cause of action have included various items in their definition of consortium between a parent and child. In *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690, 696 (1980) the court held that "children have a viable claim for loss of parental society if they can show that they were minors dependent on the parent ... [for] filial needs [of] closeness, guidance and nurture." In *Hay v. Medical Center Hospital of Vermont,* 145 Vt. 533, 496 A.2d 939, 492 (1985), the court noted that parental consortium included love, companionship, affection, society, comfort, services and solace. In *Theama v. City of Kenosha,* 117 Wis.2d 508, 344 N.W.2d 513 (1984), the court included care, guidance, love and protection as the elements which the children lost when their father was injured. And the courts in *Ueland v. Reynolds Metals Co.,* 103 Wash.2d 131, 691 P.2d 190 (1984), *Berger v. Weber,* 82 Mich.App. 199, 267 N.W.2d 124 (1978) aff'd. 411 Mich. 1, 303 N.W.2d 424 (1981), and *Reighley v. International Playtex, Inc.,* 604 F.Supp. 1078 (D.Colo.1985) have similarly defined parental consortium.

In the instant case, appellants in their brief have asserted that consortium includes society, association, companionship, comfort, affection, nurture, moral training, education, and guidance. Appellants' brief at 5–6. The amicus curiae, Pennsylvania Trial Lawyers Association,[2] limits its definition to aid, comfort and society. Brief of Amicus Curiae at 6. Neither party nor the amici curiae have questioned the sufficiency of the factual averments of loss of parental consortium in appellants' complaint, and therefore, this issue has not been addressed by the trial court. Assuming, without deciding, that the complaint in this case is sufficient we will address the only issue which the parties have raised, briefed and argued: whether to recognize a cause of action for a child for loss of parental consortium due to negligent injury of the parent.

## I.

### A.

The parties and amici curiae have presented numerous arguments setting forth the reasons why we should and why we should not recognize a cause of action for loss of parental consortium. Appellants' arguments and those of the Pennsylvania Trial Lawyers Association can be divided into two classes: those which affirmatively assert why we should recognize a child's cause of action and those which rebut the arguments against recognition of such a cause of action.

First, appellants assert that there is no Pennsylvania case law expressly denying a child's cause of action for loss of his parent's consortium, and it would be inconsistent with the existing law not to recognize such a cause of action. Pennsylvania not only recognizes that a husband has a cause of action for loss of his wife's consortium, but also permits a wife to seek damages for loss of consortium of her husband. *Hopkins v. Blanco*, 457 Pa. 90, 320 A.2d 139

---

**2.** The Pennsylvania Defense Institute also filed a brief as an amicus curiae, but unlike the Pennsylvania Trial Lawyers Association, the Defense Institute did not present oral argument.

(1974). Spousal consortium includes society, association, companionship, comfort and affection, 1 Speiser, *Recovery for Wrongful Death 2d*, § 3.49, and this consortium is very similar to that between a parent and child. Therefore, a child should be permitted to recover for loss of parental consortium. Also under Pennsylvania law, a child can recover in a wrongful death action for the loss of companionship, comfort, society and guidance of a parent. *Spangler v. Helm's New York-Pittsburgh Motor Express*, 396 Pa. 482, 153 A.2d 490 (1959); Pa.R.C.P. 2202. Because Pennsylvania allows a child who has been deprived of parental companionship, comfort, society, and guidance by the wrongful death of a parent to be compensated for those losses, so, too, should Pennsylvania allow children whose parents are injured to recover for the loss of those same elements of the parent-child relationship.

Carrying their affirmative argument one step further, appellants argue that denial of a child's cause of action for loss of a parent's consortium violates the equal protection clause of the United States Constitution. Appellants argue that whether one compares children of negligently injured parents and children of negligently deceased parents or children of accident victims and spouses of accident victims, there is no legitimate basis for denying only the children of injured parents the right to recover for loss of consortium.

In countering the traditional arguments made by those who would deny the existence of a child's cause of action for loss of a parent's consortium, appellants first assert that it is a poor excuse to refuse to acknowledge the cause of action based on the lack of precedent because the traditional common law view of a child as a chattel has eroded, *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351 (1971), and Pennsylvania does not bind itself to precedents of questionable validity. *Niederman v. Brodsky*, 436 Pa. 401, 261 A.2d 84 (1970) (abandoning the physical impact rule for tort damages); *Griffith v. United Airlines*, 416 Pa. 1, 203 A.2d 796 (1964) (abandoning *lex loci delicto* rule for choice of law); *Olin Mathieson Corporation v. White Cross Stores*,

414 Pa. 95, 199 A.2d 266 (1964) (abandoning interspousal immunity).

Secondly, appellants assert that the argument that a child should be denied a cause of action for loss of parental consortium because a child has no legally enforceable right to the companionship of a parent is untenable. A spouse can sue a third party tort-feasor for loss of the other spouse's consortium even though neither spouse can obtain specific relief or monetary damages from the other spouse for failure to provide consortium. Therefore even though a child can not sue a parent for failure to provide consortium, he ought to be able to recover from a third party whose negligence interferes with the parent/child relationship. Moreover, to recover damages, one need only show interference with a reasonable expectation. *McPeek v. Western Union Telegraph Co.*, 107 Iowa 356, 78 N.W. 63 (1899).

Thirdly, appellants argue that the concerns about remote or uncertain damages for a child's loss of his or her parent's consortium is not too remote or uncertain because a jury is just as capable of assessing a child's loss of consortium damages as it is of determining the difficult issues involved in standards of care, causation, and pain and suffering which are ordinarily submitted to the jury. Similarly, a child's recovery will not be duplicative of the parent's own damages for the injury so long as the jury is properly instructed that the child's claim does not include loss of financial support but only loss of companionship, society, and the other elements of consortium, and so long as the jury is instructed to consider the child's claim for loss of consortium separately from the parent's loss.

Next appellants contend that the arguments that recognition of a child's cause of action for loss of parental consortium will result in multiple lawsuits and increased liability are improper considerations. Appellants argue that juries are capable of discerning the meritorious from the spurious claim and thereby can keep the floodgates of litigation from bursting. The potential increase in the number of lawsuits if children are permitted to seek damages when their par-

ents are injured would be no different than the potential number of suits resulting from other torts involving multiple victims and could be minimized by joinder rules. The increased cost to tort-feasors due either directly to larger judgments or indirectly to higher insurance rates is irrelevant to the children's loss and the wrong committed against them and therefore should not be considered by the court as a reason for refusing to recognize the cause of action. *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970); *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A.2d 193 (1965).

Finally, appellants argue it is not necessary for the court to wait for the legislature to create the cause of action. The obstacles impeding recognition of a child's cause of action were created by the courts and therefore can be removed by the courts. Moreover, Pennsylvania courts have been willing to change rules which the legislature did not make. *Id.,* 417 Pa. at 503, 208 A.2d at 202.

The Pennsylvania Trial Lawyers Association asserts the same arguments set forth by appellant, but enunciates several additional policy reasons why children should be permitted to have a cause of action for loss of their parent's consortium. First, our legal system allows damages to be awarded to those who have suffered a loss or injury to help them to recover the loss or repair the injury. Although money cannot buy those elements of the parent/child relationship lost as a result of the parent's injuries, money may be able to help the child physically and emotionally by enabling the family to hire a housekeeper who could provide some of the guidance and companionship which a parent may no longer be able to give or to provide the child with psychiatric treatment to help him or her adjust to the loss. Money damages also can be used to help such children to develop and maintain their character. The association also argues that spouses who are permitted to receive damages for loss of consortium are usually able to develop a new relationship with another adult, whereas, children, who presently are not allowed to recover for loss of a parent's

consortium, are often unable to develop a similar new relationship. Finally, the Association argues that the courts should allow children to receive an individual recovery separate from any award to the parent to ensure that the child receives the benefit of money intended to compensate him for his loss and to prevent the parent from using the money for other purposes.

## B.

Appellee and the Pennsylvania Defense Institute present numerous reasons why children should not be permitted to recover for the loss of parental consortium. Initially appellee points out that if we allow claims for loss of consortium beyond those of spouses, we are likely to have claims between siblings, parents and adult children, grandparents and grandchildren, step-parents and step-children, and even between friends or colleagues. However, to sue in tort one must have a legally protected interest, and in this case the interest which is sought to be protected is a two-parent household.[3] Because this interest is not legally protected, we should not extend to children the right to sue for loss of consortium.

Appellee also argues that the development of the common law does not require the creation of a new cause of action for children to sue third party tort-feasors for the emotional loss of consortium. Historically, the common law allowed no recovery unless there was physical harm to the person seeking damages. The common law was then expanded to allow recovery for emotional harm in the absence of physical harm if there was an *intentional* infliction of emotional distress. Restatement (Second) of Torts § 46. Thus the short-lived tort of alienation of affections was developed as an intentional tort. *Mission v. Grossman*, 329 Pa. 151, 196

---

**3.** This argument is apparently directed at paragraphs 16 and 18 of appellants' complaint in which appellants do not allege injury to their relationship with either their mother or their father individually, but instead they aver that they are "suffering from the change in relationship between [their] parents affecting the normal care, comfort, and society in [their] family to which [they] are entitled to have free of the harm caused by the defendant."

A. 494 (1938). While the court has been willing to expand the common law even further to allow a party to seek damages solely for emotional harm *negligently* inflicted, the court has strictly limited the recovery to that for shock from the direct sensory and contemporaneous observance of an accident. It has specifically refused to augment the class of common law torts to include the negligent infliction of continuing emotional damage such as grief and bereavement. *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979); *Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 471 A.2d 493 (1984). The children's claim in this case, that they have an interest in a "normal" two-parent household protected against a third party's negligent interference, has never been recognized and is not logically related to the court's expansion of liability for emotional injuries.

Appellee next argues that a spouse's claim for loss of consortium must be distinguished from a child's claim of loss of parental consortium. First, spouses have a contractual relationship, whereas the parent/child relationship is one of chance. Secondly, in a spousal relationship, there can be only one claim for loss of consortium whereas all of a parent's children may have claims for loss of consortium. Thirdly, spouses are viewed as a united whole, and injury to one is injury to the other. The spousal relationship is also viewed as a permanent relationship whereas a parent/child relationship on the other hand, albeit biologically permanent, is not usually an emotionally-interdependent one. A parent/child relationship also differs from a spousal one because there may be after-born children who claim loss of consortium. Another distinction is that a damage award to a child for loss of consortium while a minor would be placed in a fund, the bulk of which ordinarily would not be available until the child had reached majority and presumably no longer suffered from the lack of consortium. Finally, the only reason that spousal claims for loss of consortium were expanded to allow wives to recover was because the constitution required males and females to be treated equally. There is no similar constitutional requirement of equality for all blood relatives.

Appellee argues that childrens' claims for loss of consortium, such as the ones in this case, involve difficulties in proof and especially causation. For example, appellants' claims are for indirect emotional harm: appellants' claim that appellee's negligence caused their mother to be raped which caused her to suffer emotional problems which caused a breakdown in their parent's marriage which has adversely affected appellants emotionally. Thus not only do they not claim any physical injury, but the emotional injury they claim is causally remote.

Appellee's next argument is that a child should not be able to recover for loss of parental consortium because a parent does not have the reciprocal right to recover for his child's loss of consortium. *Quinn v. Pittsburgh*, 243 Pa. 521, 90 A. 353 (1914); *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979). A parent can recover only pecuniary losses, such as loss of services and medical expenses, for injury to his child. A minor child does not ordinarily pay his parent's medical bills, and economic loss to a child is recovered in the parent's direct claim for lost wages. Thus the reasons for allowing parents to recover pecuniary losses stemming from a child's injury do not exist for children. It would be anomolous to allow children to recover for a loss to the parent/child relationship which the parent cannot recover.

Appellee also argues that the legislature, not the court, should establish a child's cause of action for loss of parental consortium. The legislature is better equipped to consider and control the effect on society resulting from the creation of a new cause of action. This is evidenced by the fact that the cause of action for wrongful death, which appellants analogise to the proposed cause of action is a legislatively created one.

Finally, appellee argues that wrongful death actions are not analogous to the proposed cause of action. Wrongful death actions provide no independent cause of action to a child. Rather a child is the beneficiary of the wrongful death recovery in the same proportion as his intestacy rights. *Beascoechea v. Sverdrup & Parcel and Associates,*

486 F.Supp. 169 (E.D.Pa.1980). Wrongful death actions are also distinguishable because they are the only means by which a family unit can recover for loss of care and services of a deceased parent.

## II.

Both appellants and appellee recognize that there is a division of authority as to whether or not a child's cause of action for loss of consortium should be recognized. Six state courts have recognized a child's cause of action for loss of parental consortium resulting from the parent's tortiously-inflicted injury. *Hay v. Medical Center of Vermont,* 145 Vt. 533, 496 A.2d 939 (1985); *Ueland v. Reynolds Metals Co.,* 103 Wash.2d 131, 691 P.2d 190 (1984); *Theama v. City of Kenosha,* 117 Wis.2d 508, 344 N.W.2d 513 (1984); *Weitl v. Moes,* 311 N.W.2d 259 (Iowa, 1981); *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690 (1980) and *Berger v. Weber,* 82 Mich.App. 199, 267 N.W.2d 124 (1978) aff'd, 411 Mich. 1, 303 N.W.2d 242 (1981). Nineteen state courts and three federal courts interpreting state law have refused to acknowledge such a cause of action. *Kershner v. Beloit Corporation and Black Clawson Co., Inc.,* 611 F.Supp. 943 (D.Maine, 1985); *Lewis v. Rowland,* 287 Ark. 474, 701 S.W.2d 122 (1985); *Zorzos v. Rosen,* 467 So.2d 305 (Fla.1985); *Sanders v. Mt. Sinai Hospital,* 21 Ohio App.3d 249, 487 N.E.2d 588 (1985); *Bennight v. Western Auto Supply Co.,* 670 S.W.2d 373 (Tex.App.1984); *W.J. Bremer Co., Inc. v. Graham,* 169 Ga.App. 115, 312 S.E.2d 806 (1983); *Block v. Pielet Bros. Scrap and Metal Inc.,* 119 Ill.App.3d 983, 75 Ill.Dec. 515, 457 N.E.2d 509 (1983); *Versland v. Caron Transport,* 671 P.2d 583 (Mont.1983); *Salin v. Kloempken,* 322 N.W.2d 736 (Minn.1982); *Norwest v. Presbyterian Intercommunity Hospital,* 293 Or. 543, 652 P.2d 318 (1982); *DeAngelis v. Lutheran Medical Center,* 84 A.D.2d 17, 445 N.Y.S.2d 188 (1981), aff'd, 58 N.Y.2d 1053, 462 N.Y.S.2d 626, 449 N.E.2d 406 (1983); *Hoesing v. Sears, Roebuck and Co.,* 484 F.Supp. 478 (D.Neb.1980); *Morgel v. Winger,* 290 N.W.2d 266 (N.D.1980); *Hinde v. Butler,* 35 Conn.Sup. 292, 408

A.2d 668 (1979); *Bradford v. Union Electric Co.*, 598 S.W.2d 149 (Mo.App.1979); *Borer v. American Airlines, Inc.*, 19 Cal.3d 441, 138 Cal.Rptr. 302, 563 P.2d 858 (1977); *Kelly v. United States Fidelity and Guaranty Co.*, 353 So.2d 349 (La.App.1977); *Early v. United States*, 474 F.2d 756 (9th Cir.1973) (interpreting Alaska law); *General Electric Co. v. Bush*, 88 Nev. 360, 498 P.2d 366 (1972); *Russell v. Salem Transportation Co., Inc.*, 61 N.J. 502, 295 A.2d 862 (1972); *Hoffman v. Dautel*, 189 Kan. 165, 368 P.2d 57 (1962); *Pleasant v. Washington Sand and Gravel Co.*, 262 F.2d 471 (D.C.Cir.1958); *Jeune v. Del E. Webb Construction Co.*, 77 Ariz. 226, 269 P.2d 723 (1954). Not only has the overwhelming majority of courts which have addressed the issue denied a minor's cause of action for loss of parental consortium, but since 1980 when the first state supreme court, the Supreme Judicial Court of Massachussettes, considered the issue, and stepped into the vanguard and permitted a child to recover for loss of parental consortium, only five courts have followed Massachusettes' lead while thirteen have continued to refuse to extend the common law to include such a cause of action. Therefore, we do not find a general consensus among state courts to allow the cause of action.

### III.

Several of the arguments against allowing the cause of action are unpersuasive. The emotional damages which a child suffers when a parent is injured are no more remote or uncertain than the damages for loss of spousal consortium. The possibility of double recovery can be avoided by careful jury instructions. Multiple individual claims can be avoided by requiring joinder of parties. Similarly, lack of precedent and increased litigation are irrelevant concerns assuming that the claims are inherently legitimate and legally protected or worthy of protection.

However, the arguments affirmatively asserted by appellant in favor of allowing the cause of action are also not convincing. First, to assert that the cause of action should

be recognized *because* minors have a legally enforceable right against third parties who interfere with their familial relationships is simply to assert the conclusion to the ultimate question. Secondly, to argue that children whose parents are injured must be treated the same as children whose parents are negligently killed or as husbands and wives whose spouses are negligently injured is to misconstrue the class protected by the wrongful death statute,[4] as well as the basis of the spousal and filial relationships.

 It is improper to equate children whose parents are negligently injured and children protected by the wrongful death statute. The wrongful death statute is not so much a separation of classes of children as a distinction between the scope of a tort-feasor's liability for causing fatal as opposed to non-fatal injuries. *Norwest v. Presbyterian Intercommunity Hospital,* 293 Or. 543, 652 P.2d 318, 332 (1982). The wrongful death statute also does not create only the class of children as its beneficiaries. Rather, the class which the statute benefits is that of the spouse, children, or parents of the deceased, and any recovery must be shared in proportion to the beneficiaries' intestate shares. 42 Pa.C.S. § 8301(b); *Russell v. Salem Transportation Co.,* 61 N.J. 502, 295 A.2d 862, 865 (1972). Moreover, the statute allows recovery only when the child is totally and permanently deprived of all parental consortium. When a parent is injured, the child will, except in rare cases, lose only some of the elements of parental consortium and only for a limited period of time. Therefore, there is no merit to appellants' argument that to deny children a general cause of action for loss of parental consortium due to a negligently inflicted injury to the parent violates the equal protection clause.

The difference in creation of spousal and filial relationships justifies the differential treatment between spouses and children. Spouses enter into their relationship freely and by choice and do so to bind one another together into a permanent unity. A child, however, has no control over the

4. 42 Pa.C.S. § 8301.

commencement of the parent/child relationship, and rather then trying to become one with his parents, he perpetually strives to develop from a totally dependent person to one which is entirely independent. Although both relationships involve love, companionship, affection, guidance and care, the nature of those elements, the ends which they ideally achieve, and the means by which they reach those ends is subtly but intrinsically different. Therefore, although indentical labels can be attached to the elements of the spousal relationship and the parent/child relationship, substantively the relationships are different and are not comparable.

The policy reasons advanced by the Trial Lawyers Association to support the recognition of the cause of action are, with one exception, also not persuasive. Despite the intangible nature of the loss of consortium, we do not deny that some monetary value can be placed on the loss and that monetary damages can alleviate the outward manifestations of the loss, such as the loss of services and the loss of educational training. But to argue that we must allow children to have a cause of action for loss of parental consortium because the loss of parental consortium affects the child's character which in turn impacts on society suggests that any child raised by only one parent or by grandparents or other relatives or by a foster parent has an impaired character. It also assumes that monetary damages can directly or indirectly impart character to a child which would otherwise have been imbued by the injured parent. Good character cannot be purchased, nor is its possession limited to children who are raised by two natural or adoptive parents. Therefore, we attach little significance to the argument that creation of a child's cause of action for loss of parental consortium will benefit society by improving the character of its youth.

Equally specious is the argument that children should have a cause of action because, unlike spouses who can recover money damages for loss of consortium, children who lose parental consortium suffer the additional problem

of being unable to establish new relationships with adults. This argument, which in essence is that a husband or wife can find a new spouse if they suffer loss of consortium of their present spouse, but a child cannot as easily find a new parent, assumes that spouses are fungible and that the loss of a particular spouse's unique consortium can be replaced simply by finding another spouse. Not only is this assumption erroneous, but even if it were true, the inability to establish a personal relationship, which by its very nature cannot be bought with money, bears no relationship to money damages for loss of consortium. This argument also attempts to compare a spousal relationship with a parent/child relationship which we have already concluded is not comparable.

We are also unpersuaded that a separate damage award for the child is necessary to avoid the parent misspending the child's portion of the parent's damage award. This argument assumes that presently a child is entitled to and does receive indirectly a damage award when the injured parent recovers damages for his or her injuries. At least until a right to damages for loss of parental consortium is established, the injured parent's damages award belongs exclusively to him, and the child has no claim to any portion of the parent's award. The jury cannot allocate part of the award to the child. Thus there is no child's portion for the parent to misspend.

We view the question raised in this case as a policy issue of how far we will extend liability beyond the ordinary principles of negligence which limit liability to those who are immediately injured and to those for whom liability is established by some legal source other than foreseeability. *Norwest v. Presbyterian Intercommunity Hospital,* 293 Or. 543, 652 P.2d 318, 333 (1982). Appellants' attempts to compare their legal entitlement to that of a person bringing a wrongful death action or of a spouse bringing a claim for loss of consortium are not persuasive, and some other justification for extending liability must be established. To recognize a child's cause of action for loss of parental

consortium will certainly impact upon society through high-er insurance premiums or more people carrying no insur-ance because of prohibitive costs. However, society may benefit if the cause of action is recognized because children of negligently injured parents will have the funds with which to replace those elements of a parent/child relation-ship which can be purchased, and the children's develop-ment will not suffer from lack of economic support.

■ The legislature has more wide-spread resources to utilize in weighing the benefits of allowing children to have a right to recover damages for loss of parental consortium due to negligent injury and is the appropriate entity to determine if Pennsylvania will recognize a child's cause of action for loss of parental consortium and under what circumstances. The legislature has the ability to enact legislation for wrongful injury patterned on the wrongful death statute. Concern about increased litigation and mul-tiple claims could thereby be addressed by allowing only one action to be brought and only one recovery to be made which must be shared by some legislatively determined apportionment among a legislatively determined class of beneficiaries. The legislature is also the more appropriate branch of government to establish the suggested new cause of action because then, if it is determined that some recov-ery should be allowed but that the benefits of unlimited recovery is out-weighed by the cost to society, the legisla-ture can establish a rule of law allowing partial recovery under circumstances and upon conditions which the people's representatives have established to be fairest and most beneficial to all.

Our reluctance to judicially expand tort liability in this case is supported by Justice Flaherty's concurring opinion in *Mazzagatti v. Everingham*, 512 Pa. 266, 516 A.2d 672 (1986). In *Mazzagatti*, the Supreme Court refused to ex-tend tort liability for negligent infliction of emotional dis-tress of a close relative who does not observe the accident but instead arrives at the scene of the accident and ob-

serves the victim a few minutes afterwards. Justice Flaherty concurred and stated:

> It is illusory to believe the public does not pay for tort recoveries, or that resources for such are limitless. As it is with everything, a *balance* must be struck—certain limits drawn. We are, in the end, dealing with money, and that money must come from somewhere—from someone: the public pays for the very most part by increased insurance premiums, taxation, prices paid for consumer goods, medical services, and in loss of jobs when the manufacturing industry is too adversely affected. A sound and viable tort system—generally what we now have—is a valuable incident of our free society, but we must protect it from excess lest it becomes unworkable and alas, we find it replaced with something far from desirable.

*Id.*, 512 Pa. 266, 281, 516 A.2d 672, 680 (1986) (Justice Flaherty, Concurring).

We conclude that because there is no constitutional mandate compelling us to recognize a cause of action for loss of parental consortium, because there is presently no legal basis for allowing the cause of action, because there is no general or growing consensus that such a cause of action should be established, and because to allow such a cause of action is a policy determination which can most thoroughly and representatively be considered and resolved by the legislature, we do not recognize a child's cause of action for loss of parental consortium due to tortious interference of a third party.

Order affirmed.

BROSKY, J., files a dissenting statement.

TAMILIA, J., did not participate in the decision of this case.

BROSKY, J., dissenting statement:

I must respectfully dissent. Although I agree with the majority that we are not compelled to recognize a child's

cause of action for loss of parental consortium, I cannot agree with its conclusion that we should not do so. Accordingly, I would reverse the order of the court below and remand the case for appellants' action to continue.

The majority, in essence, relies on two bases in its determination that it should deny Michael Steiner a right to be compensated for the loss of his mother's consortium. First, it concludes that "[t]he difference in creation of spousal and filial relationships justifies the differential treatment between spouses and children." Second, it concludes the decision whether to allow the cause of action is better left to the legislature. I find neither of these bases to be persuasive.

Assuming that the majority's perceived distinction between the relationship of spouses and the relationship of a parent and a child exists, the majority nevertheless fails to explain why that distinction should make a difference as to which relationship is to receive protection in our courts. The majority concedes both that "[t]he emotional damages which a child suffers when a parent is injured are no more remote or uncertain than the damages for loss of spousal consortium," and that "some monetary value can be placed on the loss [of parental consortium] and that monetary damages can alleviate the outward manifestations of the loss ..." Why then should either the fact that a child has no control over the commencement of the parent/child relationship or the fact that children generally strive to become independent mean that spouses should be compensated for a loss of consortium while children should not be? I see no reason why and the majority offers none.

The majority also concludes that the decision whether to allow a cause of action for loss of parental consortium is a policy determination which is best left to the legislature to resolve. I believe the majority's position is best rebutted by reference to the case of *Ferriter v. O'Connell's Sons*, 381 Mass. 507, 413 N.E.2d 690, 695 (1980), in which the Supreme Judicial Court of Massachusetts stated the following:

As for the argument that we should withhold our hand until the Legislature acts, we need only repeat: "In a field long left to the common law, change may well come about by the same medium of development. Sensible reform can here be achieved without the articulation of detail or the creation of administrative mechanisms that customarily comes about by legislative enactment.... In the end the Legislature may say that we have mistaken the present public understanding of the nature of the [parent-child] relation, but that we cannot divine or anticipate.

The lack of a broad, fully articulated system in case law is a strength, not a weakness. The gaps are not filled in all at once on an abstract, theoretical basis, but gradually, case by case, as the facts of actual cases in controversy put the choices in a real-life context. This is the very genius and vitality of the common law, and we should celebrate it and exercise our proper prerogatives. Unlike the majority, I do not believe we should shrink from our historic role.

The compensation of those who have wrongfully suffered losses is the very heart of our system of civil justice. Absent an affirmative reason why a person should not be so compensated, a cause of action should be allowed to proceed. I do not believe that the majority has advanced any such affirmative reason[1] and I, therefore, would reverse the order of the court below and allow appellants' action for Michael Steiner's loss of his mother's consortium to proceed.

**1.** The majority also rejects an affirmative reason for allowing appellants' cause of action based upon a misperception of appellants' argument. Appellants argue that a separate damage award would avoid instances where a parent might misspend the child's portion of the parent's damage award. This argument does not assume, as the majority believes, that the child is presently entitled to a portion of the parent's award; it is simply a recognition that injured parents would normally spend a portion of their awards to compensate the child for the loss of consortium. The point of appellants' argument is that since the child is not legally entitled to such a portion of the parent's award, he may remain uncompensated for his injury. The allowance of a separate damage award for the child would assure that compensation.