## McShane v. Shashikumar

*Charles J. Weiss,* for plaintiffs.
*Thomas A. Brophy,* for defendant Shashikumar.
*Richard A. Kolb,* for defendant Abington.

YOHN, *J.,* January 21, 1988—James and Joyce McShane filed a complaint on December 31, 1984, on behalf of Megan McShane, their minor daughter, and in their own right, seeking damages allegedly resulting from medical care negligently rendered to their daughter by Abington Memorial Hospital and Dr. V. L. Shashikumar, defendants.

Count III of the complaint sets forth several purported causes of action on behalf of parents. In particular, in paragraph 51 of count III, parents alleged that they have been deprived of "the society, companionship, love, affection and service" of the minor. In addition, in paragraphs 52-55 of count III, parents seek recovery for negligent infliction of emotional distress.

On June 15, 1987, 2½ years after the filing of the complaint, defendant Shashikumar filed a motion for partial summary judgment with regard to parents' claims in count III for loss of consortium and

negligent infliction of emotional distress. Parents then filed an answer to the motion, and oral argument was held before this court on September 16, 1987. At the conclusion thereof, this court granted defendant's motion for partial summary judgment with regard to these claims and dismissed the relevant portions of the complaint. Plaintiff-parents appeal.

## ISSUES RAISED

Plaintiffs claim that the court erred in:

(1) granting defendant's motion for partial summary judgment as to the claim of plaintiff-parents for loss of their child's consortium,

(2) granting defendant's motion for partial summary judgment as to the claim of plaintiff-parents for negligent infliction of emotional distress and,

(3) granting defendant's motion for partial summary judgment prematurely as the discovery in the case is not complete.

## STANDARD FOR GRANTING SUMMARY JUDGMENT

It is well established law in this commonwealth that a motion for summary judgment can be granted only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Pa.R.C.P. 1035(b); *Linwood Harvestore Inc. v. Cannon,* 427 Pa. 434, 235 A.2d 377 (1967); *Just v. Sons of Italy Hall,* 240 Pa. Super. 416, 368 A.2d 308 (1976); *Matson v. Parking Service Corp.,* 242 Pa. Super. 125, 363 A.2d 1192 (1976). In ruling on a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party, who must be given the benefit of all reasonable inferences to be drawn therefrom.

Furthermore, if there is any doubt as to the existence of a genuine issue of material fact, it must be resolved against the moving party. *Mscisz v. Russell,* 338 Pa. Super. 38, 487 A.2d 839 (1985); citing: *Lehigh Electric Products Co. v. Pennsylvania National Mutual Cas. Ins. Co.,* 257 Pa. Super. 198, 202-203, 390 A.2d 781, 783 (1978), *Schacter v. Albert,* 212 Pa. Super. 58, 62, 239 A.2d 841, 843 (1968). Finally, summary judgment may be entered only where there is not the slightest doubt as to the absence of a triable issue of material fact. *Long John Silver's Inc. v. Fiore,* 255 Pa. Super. 183, 386 A.2d 569 (1978); *Bennetch v. Dreistadt,* 242 Pa. Super. 529, 364 A.2d 398 (1976); *Prince v. Pavoni,* 225 Pa. Super. 286, 302 A.2d 452 (1973).

## DISCUSSION

### A. *Claim For Loss of Child's Consortium*

Parents first contend that the court erred in granting defendant's motion for summary judgment as to their claim for loss of their child's consortium. The court disagrees.

It is, of course, well established in Pennsylvania that either spouse is entitled to recover for loss of consortium with the other.[1] *Klein v. Council of Chemical Assoc.,* 587 F.Supp. 213 (E.D. Pa., 1984); citing: *Reuter v. United States,* 534 F.Supp. 731, 733, (W.D. Pa, 1982); *Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1974). The Pennsylvania trial courts have uniformly recognized the rigidity of the common law rule and have refused to extend the

---

1. The court notes that consortium is defined as comprehending only the "conjugal fellowship of husband and wife and the right of each to the company, society, cooperation, affection and aid of the other in every conjugal relation." *Black Law Dictionary* (Fifth Edition, 1981).

spousal loss-of-consortium claims even to include parties who, were engaged when the injury occurred and who married shortly thereafter. *Akers v. Martin,* 14 D.&C.3d 325 (1980); *Rockwell v. Liston,* 71 D.&C.2d 756 (1975); *Sartori v. Gradison Auto Bus Co.,* 42 D.&C.2d 781 (1967). Thus, under Pennsylvania law, there may be no recovery by parents for the loss of consortium of a child. *Quinn v. Pittsburgh,* 243 Pa. 521, 90 A. 353 (1914); See also, *Roberts v. Lankenau Hospital,* 15 D.&.C.3d 127· (1980).

To the court's knowledge there is no appellate authority in this commonwealth establishing a parent's right to a claim for the loss of the consortium of a child. In addition, the common pleas cases cited by plaintiff that recognized such a right are outweighed by the more recent Superior Court decision on parent/child consortium, which reaffirmed the court's reluctance to extend the cause of action for consortium to anyone outside the spousal relationship. In *Steiner v. Bell Telephone Company of Pennsylvania,* 358 Pa. Super. 505, 517 A.2d 1348 (1986), the Superior Court refused to recognize a cause of action on behalf of a child for the loss of parental consortium. The court, after reviewing the law of various states on this point, concluded that there is no general consensus among state courts to allow such a cause of action.

The court in *Steiner* had before it a cause of action involving a child's claim for the loss of parental consortium, but its reasoning is broadly worded and, in this court's judgment, applicable to a parent's claim for the loss of a child's consortium as well. The court reasoned as follows:

"The difference in creation of spousal and filial relationships justifies differential treatment between spouses and children. Spouses enter into their rela-

tionship freely and by choice and do so to bind one another together into a permanent unity. A child, however, has no control over the commencement of the parental/child relationship and rather than trying to become one with his parents, he perpetually strives to develop from a totally dependent person to one which is entirely independent. Although both relationships involve love, companionship, affection, guidance and care, the nature of those elements, the ends which they ideally achieve, and the means by which they reach those ends is subtly but intrinsically different. Therefore, although identical labels can be attached to the elements of the spousal and the parent/child relationship, substantively the relationships are different and not comparable." *Steiner* at 518-19, 517 A.2d at 1355.

The court went on to state that "there is presently no legal basis for allowing the cause of action" and held that:

"The legislature is also the more appropriate branch of government to establish the suggested new cause of action because then, if it is determined that some recovery should be allowed but that the benefits of unlimited recovery is [sic] outweighed by the cost to society, the legislature can establish a rule of law allowing partial recovery under circumstances and upon conditions which the people's representatives have established to be fairest and most beneficial to all." *Steiner* at 521, 517 A.2d at 1356-57.

The court's reasoning in *Steiner* applies with at least equal force to a parent's claim for the loss of a child's consortium. Moreover, to date, the legislature of this commonwealth has not recognized the cause of action for parental/child consortium.

Thus, this court concludes that there has been no extension of the common law rule with reference to

consortium claims in order to allow recovery by parents for the loss of consortium of a child. *Quinn v. Pittsburgh,* 243 Pa. 521, 90 Atl. 353 (1914); see also, *Roberts v. Lankenau Hospital,* 15 D.& C.3d, 127 (1980). In light of the above, the claim of parents for the loss of the consortium of daughter is noncognizable under the laws of Pennsylvania and was correctly dismissed with prejudice from plaintiffs' complaint.

## B. Claim for Emotional Distress

Plaintiffs next contend that the court erred in granting defendant's motion for partial summary judgment as to their claim for negligent infliction of emotional distress.

The court initially notes that there can be no recovery for negligent infliction of emotional distress unless the requirements of *Neiderman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970), or *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979), are met.

In *Neiderman,* supra, a father watched as a car skidded onto a sidewalk and struck his son who was standing next to him. Immediately after the incident the father experienced severe chest pain and was hospitalized for five weeks. The father brought an action against the motorist for injuries resulting from fright and shock without physical impact. In recognizing plaintiff's right to bring such an action, the court abandoned the requirement of a physical impact as a precondition to recovery for damages proximately caused by the tort, where plaintiff was in danger of physical impact because of the direction of the negligent force and where the plaintiff actually did fear the physical impact. *Neiderman* at 413, 261 A.2d at 90. The test expounded in *Neiderman* became known as the "zone of danger" theory.

In *Sinn v. Burd,* supra, the court in a plurality opinion filed by Justice (now Chief Justice) Nix, modified the "zone of danger" theory.[2] In *Sinn,* plaintiff sought to recover damages for physical and mental injuries she received as a result of watching her minor daughter being hit and killed by a car. Plaintiff herself was not within the zone of physical danger and had no reason to fear for her physical safety.

In allowing plaintiff to recover for emotional distress Justice Nix wrote that:

"[A] tortfeasor's liability for mental distress is not to be denied solely because the plaintiff was beyond the zone of physical danger, we must examine whether the injuries sustained [by plaintiff] were reasonably foreseeable." *Sinn* at 173, 404 A.2d at 686.

The court adopted the three-pronged test used in *Dillon v. Legg,* 68 Cal. 2d 728, 69 Cal. Rptr. 72, 80, 441 P.2d 912, 920 (1968), to determine whether the injury to plaintiff was reasonably foreseeable. The criteria to be considered are:

"(1) whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it,

"(2) whether the shock resulted from a direct emotional impact upon plaintiff from a sensory and contemporaneous observance of the accident as contrasted with hearing of the accident from others after its occurrence, [and]

"(3) whether plaintiff and the victim were closely related as contrasted with an absence of any rela-

---

2. The court notes that the decision in *Sinn* was limited solely to those cases in which plaintiff alleges psychic injury as a result of actually witnessing defendant's act. *Sinn* at 166-67, n. 15, 404 A.2d at 663, n. 15.

tionship or the presence of only a distant relationship." *Sinn,* supra, at 685, quoting *Dillon v. Legg,* 68 Cal. 2d 728 (69 Cal. Rptr. 72, 80, 481 P.2d 912, 920 (1968).

The court admits there can be no dispute that plaintiff-parents are "closely related" to their minor-child. The court, however, finds that plaintiff-parents' claim for negligent infliction of emotional distress does not meet the first or second requirements of *Sinn.*

Clearly the Pennsylvania Supreme Court in *Sinn,* supra, "contemplated a discrete and identifiable traumatic event to trigger recovery" for the negligent infliction of emotional distress. *Berardi v. Johns-Manville Corp.,* 334 Pa. Super. 36, 44, 482 A.2d 1067, 1071 (1984), quoting *Amader v. Johns-Manville Corp.,* 514 F.Supp. 1031, 1032 (E.D. Pa., 1981); See also, *Tackett v. Encke,* 353 Pa. Super. 349, 509 A.2d 1310 (1986).

Here, plaintiff-parents allege only that they observed minor-plaintiff before and after the surgery performed by Dr. Shaskikumar. At no time have plaintiff-parents identified any "discrete and identifiable trauma" which they witnessed. Rather, plaintiffs witnessed only their minor child's reaction to an alleged misdiagnosed and/or negligent treatment. Unfortunately for plaintiff-parents, failure to diagnose and treat does not constitute a discrete and identifiable traumatic event since this involves the invisible thought processes of the attending health care providers. *Amader,* 514 F. Supp. at 1031.

In *Mazzagatti v. Everingham,* 512 Pa. 266, 516 A.2d 672 (1986), the Pennsylvania Supreme Court was faced with similar facts. The mother of a daughter who was fatally injured by a motorist brought an action for negligent infliction of emotional distress against the motorist. Plaintiff-mother

did not contemporaneously observe the accident but arrived at the scene of the accident a few minutes afterwards and observed her badly injured duaghter lying in the street. The court, following the teachings of *Sinn*, supra, held that plaintiff-mother was not entitled to recover on a theory of emotional distress. The court reasoned that:

"[T]he critical element for establishing such liability is the contemporaneous observance of the injury to the close relative. Where, as here, plaintiff has no contemporaneous sensory perception of the injury, the emotional distress results more from the particular emotional makeup of plaintiff than from the nature of defendant's actions." *Mazzagatti* at 280, 516 A.2d at 679.

Here, plaintiff-parents have admitted in their averments in the complaint that their observation is second-hand and after the fact. They observed the condition and alleged suffering of minor-plaintiff after the surgery, but did not witness the surgery itself. Thus, in light of the aforementioned case law it is clear to this court that plaintiff-parents have not met the necessary criteria for maintaining a cause of action for the negligent infliction of emotional distress.

The court is mindful of the case of *Bliss v. Allentown Public Library,* 497 F. Supp. 487 (E.D. Pa., 1980), in which the court allowed recovery for infliction of emotional distress by a mother who saw her disfigured child immediately after a statue crushed her, even though the mother did not actually witness the accident. Significantly, the mother heard the metal sculpture fall upon her child and turned to see her child lying on the floor with the statue positioned across her arm. In the instant matter, however, plaintiff-parents have failed to identify a discrete and identifiable traumatic event that

would trigger recovery. Furthermore, and perhaps most important, there was no contemporaneous sensory perception on the part of plaintiff-parents of the injury to their minor-child.

If this court is to ascertain anything from *Neiderman, Sinn* and the cases that followed, it is that in each the act of defendant immediately resulted in a sensory experience causing mental distress. *Vattino v. Lower Bucks Hospital Inc.* 502 Pa. 241, 262, 465 A.2d 1231 (1983), (Nix, J., concurring).

In the instant matter, plaintiff-parents neither witnessed the negligent action as required by *Sinn,* nor were they in any danger as required by *Neiderman.* Accordingly, the court was correct in dismissing with prejudice the plaintiff-parents' claim for the negligent infliction of emotional distress.

## C. Premature Granting of Summary Judgment Motion

Plaintiffs' final contention is that the court erred in granting defendants' motion for partial summary judgment in that discovery in this case was not complete.

Summary judgment is made available by Pa.R.C.P. 1035 when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Matson* at 129, 363 A.2d at 1194, quoting *Husak v. Berkel Inc.,* 234 Pa. Super. 452, 458, 341 A.2d 174, 177 (1975).

In the instant matter the court was not asked to displose of the entire case but only to deal with

those issues raised in count III of plaintiff-parents' complaint. Rule 1035(c) of the Pennsylvania Rules of Civil Procedure is designed to deal with such situations. Rule 1035(c) provides:

"If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, *by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted.* It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly."

The above rule makes it clear that the court is to make a decision based on the pleadings, depositions, interrogatories, admissions and affidavits of record as of the time that the court rules on the motion for partial summary judgment. Thus, plaintiff-parents' assertion that the court's granting of the motion for summary judgment was premature because discovery was not complete is incorrect. Furthermore, if plaintiffs desired to present additional evidence they could have done so, even by affidavit, prior to the court ruling on the motion (Pa.R.C.P. 1035(d)) or requested a continuance of the ruling on the motion in order to put other facts on the record. Plaintiff-parents' counsel did neither.

For all of the foregoing reasons, this court's order of October 27, 1987, granting defendants' motion for partial summary judgment should be affirmed.